BARBARA SUE DRENNEN

*v.*

DEPARTMENT OF HEALTH; WILLARD ERWIN, *et al., etc., and*

GEORGE L. PICKETT, *Director, West Virginia Department*

*of Health*

(No. 14299)

Decided June 5, 1979.

*Keith H. Gordon* for appellant.

*Chauncey H. Browning*, Attorney General, *Gregory W. Bailey*, Assistant Attorney General, for appellees.

CAPLAN, CHIEF JUSTICE:

This is an appeal by Barbara Sue Drennen from a ruling by a majority of the Civil Service Commission, wherein it was held that "while a memorandum from former gubernatorial assistant, Jack Pauley, could be interpreted as an effort at political influence in favor of Cheryl Gregory, the actual hiring decision of Cheryl Gregory instead of Barbara Sue Drennen was based upon merit." We disagree with such ruling and reverse.

Barbara Sue Drennen, a life-time resident of Nicholas County and a recent graduate in accounting from West Virginia Institute of Technology, expressed an interest in obtaining an accountant position with the State Department of Health. Being informed that it would be necessary to take and pass a civil service test for the position and be certified as eligible on the Civil Service Register, she passed such test and was so certified on the register. An interview was then arranged for November 3, 1977 with Mr. Dave Burkett, the project director for the Early Childhood Development Project, a division of the Department of Health. Although the Director of the Department is the appointing authority, the recommendation of the project director, under whose supervision the employee will serve, is generally followed.

Mr. Burkett interviewed Ms. Drennen on November 3, 1977 and immediately arranged for a further interview for her in Charleston, stating in his testimony that she was "my top choice as far as people that I had interviewed". He further testified that he "would not have made the referral [to the Charleston office] unless I

wanted her employed by us." Shortly after the interview on November 3, 1977, Mr. Burkett received a call from Dr. Jack Basman, Director of Maternal and Child Health in the Department of Health. He read a memorandum from Jack L. Pauley of the Governor's Office to Mr. Burkett. The memorandum, in full, follows:

OFFICE OF THE GOVERNOR

Memorandum

TO: Paul Crabtree

FROM: Jack L. Pauley (J.L.P. handwritten initials)

DATE: November 2, 1977

Your assistance in the following matter would be very much appreciated.

Larry Tucker, delegate from Summersville, called today to ask that we help Cheryl Gregory get an accounting position at the Early Childhood Clinic in Summersville, where such vacancy does exist.

Mr. Dave Burkett at the clinic has already interviewed people whose names were on the register—Cheryl plans to take the test as soon as possible. Larry wants Dr. Basman of your department to call Dave Burkett and ask that he hold off on the hiring until he receives Cheryl's scores.

The request originated from Boyd Dotson, delegate from Webster County. Cheryl is reportedly very much qualified for the position.

As the result of the above memorandum the interview scheduled in Charleston for Ms. Drennen was cancelled; no appointment was made to fill the vacant position of Accountant I until Cheryl Gregory was permitted to take the civil service test and was certified on the register as being eligible for the position; Cheryl Gregory was hired for the subject position; and, Ms. Drennen was notified that the vacancy in the sought after position no longer existed.

The question thus raised is whether the factual situation related above, with particular reference to the memorandum from the Governor's office and what transpired thereafter, constitutes a violation of our civil service law.

*W. Va. Code*, 29-6-20(c), as amended, reads as follows:

> No person shall use or promise to use, directly or indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position in the classified service, or an increase in pay or other advantage in employment in any such position, for the purpose of influencing the vote on political action of any person, or for any consideration.

Article XVI, Rules and Regulations of the West Virginia Civil Service System provides:

Section 1. Prohibition of Discrimination.

1. No person shall be favored or discriminated against with respect to employment in the classified service because of his political or religious opinions or affiliations, race, national origin, *or other nonmerit factors.* This prohibition shall apply to recruitment, examination, *appointment,* training, promotion, demotion, dismissal, and any other personnel action. A person who alleges such discrimination shall have the right of appeal to the Commission in accordance with the provisions of Article XII of these rules.

2. Political Activities Prohibited.

1. No person shall seek or attempt to use any *political endorsement in connection with any appointment* in the classified service.

2. No person shall use or promise to use, directly or indirectly, any official authority or

influence, whether possessed or anticipated, to secure or attempt to secure for any person *an appointment or advantage in appointment* to a position in the classified service, or an increase in pay or other advantage in employment in any such position; for the purpose of influencing the vote or political action of any such person, or for any consideration. (Emphasis supplied)

From the above quoted provisions, we feel that the salutary purpose of the civil service system is to afford to those seeking employment in the classified service equal opportunity of employment, with protection from favoritism or discrimination. The appellant here, Ms. Drennen, complains that favoritism was accorded Mrs. Gregory by reason of political influence and interference. This alleged favoritism appeared in the action taken by the Department of Health pursuant to a memorandum from the "Office of the Governor", suggesting that "we help Cheryl Gregory get an accounting position at the Early Childhood Clinic in Summersville, where such vacancy does exist". From this memorandum, it is clear that the delegate from Nicholas County was interested in helping Mrs. Gregory obtain an accounting position. It further appeared that a second delegate was also interested in helping Mrs. Gregory. The testimony of the various witnesses who testified at the requested hearing emphatically discloses that the Department of Health officials were influenced and intimidated by the memorandum. Dr. Jack Basman, a division head under whom the hired accountant would be working, testified that when he received the memorandum from his superior, it was clear to him that he had to wait until Mrs. Gregory was placed on the register before filling the vacancy. He did say, however, that he felt no political pressure in the hiring of Mrs. Gregory.

The delegate from Nicholas County, Mr. Larry Tucker, testified that when he talked to the local project director on behalf of Mrs. Gregory that "he wasn't satisfied with

his response" and he then called Mr. Pauley in the Governor's office. Mr. Pauley was not available at the time and he talked to the secretary. He informed her that he had requested that the vacant position be held open until Mrs. Gregory was given an opportunity to take the civil service examination and be certified as qualified for the vacancy. Mr. Tucker testified that Mr. Pauley returned his call and told him he would try to hold the position open for Mrs. Gregory.

Mr. Dave Burkett, the person to whom the accountant employee would be directly responsible, testified that while he had interviewed several persons prior to the interview with Ms. Drennen, no suitable person had been found for the position. He confirmed that Ms. Drennen's name was on the register, that after the interview he was pleased with the results and set up a further interview for Ms. Drennen in the Charleston office. Before the Charleston interview could take place, in fact on the same day of the interview, Mr. Burkett said he received a telephone call from Dr. Jack Basman who read the memorandum from the Governor's Office to him. Mr. Burkett said he was informed tha there was "another person that was interested in the job, and that we were to not do anything until something was worked out in regards to this person." He admits that hs initial reaction "was that we were to employ this person . . . at all costs as far as, even if she was not satisfactory in terms of being able to do the job." He further admitted to calling Ms. Drennen that same day and telling her "that some political things were coming through" and that the Charleston interview was cancelled. He further testified that after contacting Mr. Tucker in an effort to learn what was "expected of us", he got the "impression" that he was merely to give Mrs. Gregory a chance to see if she could qualify and to compare her with Ms. Drennen. He says that no influence was directed at him to hire Mrs. Gregory and no pressure of any kind was brought upon him to recommend any particular person for the accountant's position. He does say that after the interviews and comparisons, he recommended Mrs. Gregory

and that she was hired. Mr. Burkett admits, however, that except for the memorandum there would have been no delay in appointing Ms. Drennen to fill the vacancy. Mr. Burkett further admitted that Mr. Tucker had taken an active interest in the Early Childhood Development program and has "been very good at supporting the program in the legislature".

Mr. Danny Franco, an accountant in the Charleston office, testified that he was "a little perturbed" when he received the memorandum. He says that "at that time" he believed the memorandum to be political interference and that "to this day" he feels uncomfortable because of the memorandum. He does say that after learning of Mr. Burkett's conversation with Mr. Tucker, he no longer felt there was any political interference but only that Mrs. Gregory be considered for the job, if qualified.

The majority opinion of the commission recognizes the dilemma, saying "[t]he most that the evidence establishes is that the memorandum from Jack Pauley's office could have been construed as an effort to influence the hiring of Cheryl Gregory." We are convinced that the evidence presented at the hearing clearly establishes that the Department of Health officials were in fact politically influenced and, except for the memorandum, would have hired Ms. Drennen on November 3, 1977. Such facts clearly demonstrate political interference. We conclude that the finding of the commission is not supported by the evidence. "A final order of the Civil Service Commission, based upon findings not supported by the evidence, upon findings contrary to the evidence, or upon a mistake of law, will be reversed and set aside by this Court upon review." Syllabus, *Guine v. Civil Service Commission of West Virginia, et al.*, 149 W. Va. 461, 141 S.E.2d 364 (1965). See also *Hall v. Protan*, _____ W. Va._____, 210 S.E.2d 475 (1974); *Appeal of Prezkop*, 154 W. Va. 759, 179 S.E.2d 331 (1971); *Billings v. Civil Service Commission*, 154 W. Va. 688, 178 S.E.2d 801 (1971). *Bava v. Civil Service Commission*, 154 W. Va. 701, 178 S.E.2d 839 (1971).

It is noted in the apellant's brief that she has found other suitable employment and does not now seek the subject appointment with the Health Department. She does seek to be compensated for the time she was unemployed due to the discriminatory action of the Department. Ms. Drennen claims she is entitled to be reimbursed for the amount she would have earned had she been employed by the Department of health less the amount she earned from her self-attained employment. We find this reasonable. Pursuant to *W. Va. Code*, 1931, 29-6-15, as amended, the action of the Department of Health is found to be without good cause and the appointing authority shall reimburse Ms. Drennen in such amount as to prevent any loss in pay. Reasonable attorney's fees are likewise awarded Ms. Drennen and such fee shall be paid by the appointing authority.

For the foregoing reasons, the action of the Civil Service Commission is reversed and the case is remanded to the commission for a proper determination of the remuneration and fees to be paid to Ms. Drennen.

*Reversed and remanded
with directions.*