## 65560. SMITH v. CITY OF ATLANTA et al.

SOGNIER, Judge.

Appellant R. Manson Smith, a lieutenant in the Atlanta Bureau of Fire Services, filed suit against the City of Atlanta, the Mayor of Atlanta and the Public Safety Commissioner of Atlanta, appellees, seeking back wages. Smith died during pendency of the suit and his widow was substituted as plaintiff. The trial court granted the City's motion for summary judgment but denied Smith's motion for summary judgment. Smith appeals, claiming error in the grant of summary judgment against him and the failure to grant his motion for summary judgment.

In 1973 Smith passed the captain's examination and was placed on the promotion list. A court order restricting promotions in the fire department prevented him from attaining the new rank. However, in September of 1975 when Smith was transferred to a new fire station, he assumed the duties of a fire captain, while retaining his lieutenant's rank and salary. This condition continued until his death in 1980. Appellant now seeks to obtain the difference in wages between that of captain and lieutenant during the period in which Smith served as acting captain.

1. Appellant contends that the trial court erred in its interpretation of Part 5, Chapter IV (Compensation), Section 14 of

the 1977 Code of Ordinances of the City of Atlanta. That section reads: "An employee shall receive no increase in salary or wages upon being required to work in a *higher classified position* on a temporary, incidental, or emergency basis, for a period of time of 30 work days or less. Upon an employee being required to perform the duties of a *higher classified position* for a period of time in excess of 30 work days, such employee shall be given an emergency appointment to the *higher classified position* and shall receive the appropriate salary or wages of the higher classification. However, in no event shall such emergency appointment be made unless the *higher classified position* is vacant or the incumbent of such position is in a non-pay leave status. At the conclusion of such assignment, the wages or salary of the employee shall revert to that which such employee was receiving prior to the employee performing the duties in the higher classification. . . ." (Emphasis supplied.)

The controversy in this case stems from interpretation of the phrase "higher classified position" as used in Section 14. Appellees contend, and the trial court held, that the phrase with its use of the word "classified" relates to Section 5-2002 of the 1977 Code of Ordinances of the City of Atlanta, which divides all civil service employees into two groups: classified service and unclassified service. Appellees assert that the use of "higher classified position" in Part 5, Ch. IV, § 14 means that the section applies only to employees who temporarily move up into a job in the classified service. Under this interpretation, Smith was not eligible for compensation because as a sworn employee of the fire bureau, he was in the unclassified service and had merely moved up temporarily into another unclassified service position.

Appellant offers an alternative interpretation of Section 14, contending that "higher classified position" should be read in light of the position classification plan of Section 5-2007 of the 1977 Code of Ordinances of the City of Atlanta. We believe appellant's interpretion is correct. Section 14 is part of a chapter setting forth rules and regulations for the fair and equitable compensation of civil service employees. Section 1 of that chapter states that the pay plan shall be directly related to the "classification plan." The "classification plan" referred to in Section 1 is not the classified-unclassified *service* distinction referred to in Section 5-2005. Rather, it is the "position classification plan" found in Section 5-2007, which provides that the rate of salary should be determined according to the level an employee has achieved in his job unit. Under this plan employees are categorized according to their horizontal job grade (their "position") in order to pay them the correct scale of salary. The difference in use of the word "classify" can

be found within Section 5-2007 itself, where paragraphs (c), (d), and (e) discuss application of the position classification plan to employees in the classified or unclassified service.

Thus, it is clear that the correct interpretation of "higher classified position" in Section 14 indicates a categorization of job advancement rather than a distinction between the two types of civil service employees. However, appellees further contend that regardless of how "higher classified position" is interpreted, appellant is still not eligible to receive compensation under Section 14 because Section 5-2022 of the 1977 Code of Ordinances of the City of Atlanta excludes all unclassified service employees from the rules and regulations in the Code. Section 5-2022 provides that the civil service rules and regulations shall apply to all classified civil service positions "*and* to all other positions of employment with the city where so indicated and where the context requires such interpretation." (Emphasis supplied.) This ordinance clearly limits application of the Code to classified service employees unless it falls under the exceptions stated above.

Appellees point to the absence of any clear language explicitly stating that unclassified service employees are included under Section 14 as proof that the section should not apply to them. However, to read Section 5-2022 as appellees construe it would require us to ignore the final phrase "and where the context requires such interpretation," which clearly includes unclassified service employees who are *implicitly* indicated in an ordinance. This final phrase was meant to encompass situations like that present here where the entire chapter in the Code contains pervasive and, in certain sections, explicit language indicating the applicability of the chapter's ordinances to all employees of the city. For example, Section 4 applies the Chapter IV pay plan to "*[a]ll* persons employed by the city" (emphasis supplied), and Section 15 states that "*[a]ll* employees of the city shall be paid by check on a regular pay period basis, as adopted by the council." (Emphasis supplied.) See also Section 13 (overtime provisions), which makes explicit reference to firefighters in a manner indicating that all employees, regardless of service classification, are included, but that a special exception had to be made for sworn employees of the fire bureau. This lack of reference to classified-unclassified service, evident throughout the chapter, shows that appellee's interpretation of Section 14 would twist the meaning of the entire chapter and warp the context in which the section was written.

Since Section 14, in context with the rest of Chapter IV, is not prevented by Section 5-2022 from including unclassified service employees, and the phrase "higher classified position" refers to the

job categorization plan in Section 5-2007, not to the classified-unclassified service distinction in Section 5-2005, we hold that the compensation provision of Section 14 does apply to unclassified service employees.

2. Appellees contend that even if appellant is entitled to compensation under Part 5, Ch. IV, Section 14, no liability attaches to them due to the city's statutory immunity. OCGA § 36-33-1 (Code Ann. § 69-301): "Municipal corporations shall not be liable for failure to perform, or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable." In support of their position that payment of back salary here is a government function, appellees cite *City of Atlanta v. Fry,* 148 Ga. App. 269 (251 SE2d 90) (1978), which held that the "operation of a police department, including the hiring, firing, promotion, demotion, and transfer of officers, is a governmental function." Id., at 269. However, we are not faced with such a prohibition in this case. *Fry* involved the discretionary advancement of employees within a government department. The employees there had no contractual right to be promoted and there was no breach of contract involved when they were demoted. In the case before us now, no discretion is involved in the payment of salary for work performed. Appellant here seeks to enforce the contract between Smith and appellees for the amount of salary which accompanied Smith's temporary job advancement. "There is a definite contractual relation between every employee and employer whether the employee is a public officer or not." *Undercofler v. Scott,* 220 Ga. 406, 410 (139 SE2d 299) (1964). The rationale of *Undercofler* is that an employee's performance of satisfactory service is consideration for a contractual relation with his employer. *Brown v. City of East Point,* 152 Ga. App. 801, 803 (264 SE2d 267) (1979). To bar appellant from recovering pay for services Smith performed by allowing appellees to claim statutory immunity would violate the prohibition against the impairment of a contract which is found in both the State and Federal Constitutions. *Bender v. Anglin,* 207 Ga. 108 (1) (60 SE2d 756) (1950); *Withers v. Register,* 246 Ga. 158, 159 (269 SE2d 431) (1980).

This court has found numerous cases involving claims by government employees seeking payment of money due them from city governments. See *Weber v. City of Atlanta,* 140 Ga. App. 332 (231 SE2d 100) (1976); *Fleming v. Maddox,* 225 Ga. 737 (171 SE2d 276) (1969); *Webb v. Whitley,* 114 Ga. App. 153 (150 SE2d 261) (1966); *City Council of Augusta v. Young,* 218 Ga. 346 (127 SE2d 904) (1962); *City Council of Augusta v. Hydrick,* 126 Ga. App. 611 (191 SE2d 563) (1972). The defense of statutory immunity was not raised in any one

of these cases. The complete absence of discussion of statutory immunity in cases of this nature reinforces the obvious conclusion that payment of salary to government employees is a perfunctory administrative duty not included under the category of government functions and not barred by any statutory immunity.

3. Appellees argue that allowing appellant to recover for the salary of a fire captain would be contrary to a Georgia superior court order, extended by a federal court order, which restricted promotions in the fire bureau. We disagree. Although Smith was prohibited from being promoted and thus was denied the prestige and other trappings which accompany the rank of captain, someone had to carry out the duties and responsibilities involved in commanding a fire station. Smith's performance of those duties entitled him to fair payment for his work. Although during the time that Smith was performing the duties of a fire captain he was entitled to a captain's salary, nothing in the performance of those duties obligated the appellees in any way to *promote* him to the position of captain when the court order was finally dissolved. Since appellees retained the right to relieve Smith of his temporarily assumed duties and replace him with whomsoever they pleased when the order became inapplicable, Smith's performance of those duties, and his receipt of pay for the performance of those duties, did not violate the court's orders.

Appellees having failed to pierce appellant's pleadings, and there being no genuine issues of material fact, we find that appellant was entitled to summary judgment as a matter of law. Hence, the trial court erred by granting appellees' motion for summary judgment and denying appellant's motion for summary judgment.

*Judgment reversed and case remanded for action in accordance with this opinion. Quillian, P. J., and Pope, J., concur.*

DECIDED JULY 14, 1983 —

*John L. Blandford, James B. Walton,* for appellant.
*Nina M. Radakovich, Marva Jones Brooks, Thomas A. Bowman,* for appellees.