341 S.E.2d 693

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, et al.**

v.

**CSC OF W.VA. and Dept. of Human Services of W.Va.**

**Sandra PERRY, Brenda DeLauder, and Betty Campbell**

v.

**W.VA. CIVIL SERVICE COMMISSION and Dept. of Human Services of W.Va.**

**Nos. 16738, 16790.**

Supreme Court of Appeals of West Virginia.

Dec. 18, 1985.

Dissenting Opinion Dec. 19, 1985.

Rehearing Denied April 4, 1986.

---

James M. Haviland, Charleston, for A.F.S.C.M.E.

Grant Crandall, Charles F. Donnelly, Bradley J. Pyles, Crandall, Pyles & Crandall, Charleston, for Perry, DeLauder and Campbell.

Thomas B. Bennett, Nicholas L. DiVita, Bowles, McDavid, Graff & Love, Charleston, for CSC.

Charlie Brown, Atty. Gen., Mary Beth Kershner, Asst. Atty. Gen., Charleston, for Dept. of Human Services.

PER CURIAM:

These are consolidated mandamus actions against the West Virginia Civil Service Commission (CSC) and the West Virginia Department of Human Services (DHS), brought by two groups of DHS employees, all of whom are protected by the provisions of our civil service law. *W. Va. Code,* 29-6-1, *et seq.* The first group, containing 19 members of the American Federation of State, County and Municipal Employees (AFSCME), were appellants in *AFSCME v. CSC,* 174 W.Va. 221, 324 S.E.2d 363 (1984) (hereinafter referred to as *"AFSCME I"*) where this Court ordered that the appellants be awarded back pay for the period of time they performed work at a higher classification level than that to which they were appointed. In *AFSCME I,* we remanded the case to the CSC for a determination of the amount of back pay to which each worker was entitled.

The AFSCME petitioners contend that this Court clearly directed the CSC to award back pay for the entire period dur-

ing which they worked out of classification and that the CSC has willfully and contumaciously ignored that directive by arbitrarily limiting the back pay awards. They move this Court to hold the CSC in contempt and they also seek fully retroactive back pay awards. We do not find that the CSC was contemptuous. However, the AFSCME petitioners' request, i.e., that we compel the CSC to comply with our earlier order, will be treated as a petition for a writ of mandamus.

The second group, containing three members of the Communications Workers of America (CWA), one of whom was an appellant in *AFSCME I,* filed grievances similar to those filed by the AFSCME petitioners, but did not appeal the CSC orders denying them relief.

The CWA petitioners seek a Writ of Mandamus to compel the CSC and DHS to award them back pay. They contend that under this Court's decision in *AFSCME I,* they are entitled to such relief.

I

This Court's conclusion in *AFSCME I* was founded on the principle of "equal pay for equal work" as established by *W. Va. Code,* 29-6-10(2) [1977].[1] *AFSCME I, supra,* 174 W.Va. at 225, 324 S.E.2d at 367.

Pursuant to its rulemaking authority, *W. Va. Code,* 29-6-10 [1977], the Civil Service Commission has promulgated procedural rules pertaining to appeals from demotions, suspensions for more than 30 days, and dismissals. *W. Va. Civil Service Rules and Regulations* § 14.01 [1981]. The commission has also, by rule, estab-

---

**1.** *W. Va. Code,* 29-6-10 [1977], is a legislative grant of rule-making authority to the civil service commission, and it provides in pertinent part:

The commission shall have the authority to promulgate, amend or repeal rules, in accordance with chapter twenty-nine-A of this Code, to implement the provisions of this article.
. . . .
(2) For a pay plan for all employees in the classified service, after consultation with appointing authorities and the state fiscal officers, and after a public hearing held by the commission. Such pay plan shall become effective only after it has been approved by the

governor after submission to him by the commission. Amendments to the pay plan may be made in the same manner. Each employee shall be paid at one of the rates set forth in the pay plan for the class of position in which he is employed. The principle of equal pay for equal work in the several agencies of the state government shall be followed in the pay plan as established hereby.
. . . .
(12) For such other rules and administrative regulations, not inconsistent with this article, as may be proper and necessary for its enforcement. . . .

lished a grievance procedure, which "applies to any matter which is subject to the control of agency management and which is of concern or dissatisfaction to an employee." *Rules and Regulations* § 23.01. Those matters which are directly appealable to the Civil Service Commission, pursuant to *W. Va. Code,* 29–6–15 [1977] and *Rules and Regulations* § 14.01, namely demotion, suspension for more than 30 days, or dismissal, are expressly not subject to the grievance procedure. *Rules and Regulations* § 23.01(c).

## II

Each of the petitioners filed a grievance, pursuant to *Rules and Regulations* § 23, alleging generally that she worked outside of classification and requesting back pay, retroactive to the date such service began. Some of the grievants specified dates; others did not; still others simply asked to be "made whole."

The grievances moved through the various stages and ultimately were reviewed by the Civil Service Commission. The Commission denied back pay in all but one case, and the appeal in *AFSCME I* followed. Our review in *AFSCME I* was predicated on the appeal provisions of *W. Va. Code,* 29–6–15 [1977].[2] We said in footnote 5 of *AFSCME I:*

**2.** *W. Va. Code,* 29–6–15 [1977], which establishes and explains the appeal rights of classified employees who are dismissed or demoted after completion of the probationary period or suspended for more than thirty days in one year, provides in pertinent part:

Any employee in the classified service who is dismissed or demoted after completing his probationary period of service or who is suspended for more than thirty days in any one year, may, within thirty days after such dismissal, demotion or suspension, appeal to the commission for review thereof.... If the commission finds that the action complained of was taken by the appointing authority without good cause, the employee shall be reimbursed to his former position or a position of like status and pay, without loss of pay for the period of his suspension, and awarded his reasonable and necessary attorneys' fees expended therein, such fees to be paid by the appointing authority.... The commission shall expressly have the authority by order to provide for such remedies as it may deem to

The petitioners have raised the issue of whether their status, prior to the reclassification, constituted a "demotion" in terms of their classification as Economic Service Workers I or II compared to the work they actually performed. We thus review the action of the Civil Service Commission concerning those petitioners pursuant to *W. Va. Code,* 29–6–15 [1977]. Although the petitioners initially sought relief in the forms of mandamus and judicial review, this action is now solely a matter of judicial review, inasmuch as the parties have resolved the mandamus aspects of this action.

### AFSCME Petitioners

On remand, the CSC limited the recovery of back pay by applying the 30-day filing period of *W. Va. Code,* 29–6–15 [1977] to the cases involving the following petitioners: Allene Baker, Doris Bias, Roberta Boggs, Darlene Butcher, Darlene Cremeans, Emma Crites, Constance Dana, Gail Fry, Brenda Gilbert, Elizabeth Kennedy, April Moyers, Linda Seals, Rose Truex, Rose Ann Vincent, Randa Watson, Kenda Weaver and Victoria Wilson. Although the 30-day filing limitation was based on *W. Va. Code,* 29–6–15 [1977], the Civil Service Commission used the date each petitioner filed her grievance, from which to count back 30 days.[3]

be appropriate after it has made a complete review of the circumstances of each individual case and such remedies shall include, but not be limited to, the restoration of all or part of an individual's back pay or wages for the period of the suspension or reinstatement of an individual to his former position or a position of like status and pay or reemployment to any other position which in the judgment of the commission is in the best interest of the parties or any combination of such remedies.... Any final action or decision taken or made hereunder shall be subject to review by the supreme court of appeals, if appeal is made within sixty days of the action or decision complained of.

**3.** In its orders, the CSC said:

[I]t is the decision of the Commission to award back pay to each such petitioner who was working out of classification from a date thirty days prior to the date each grievance was initially filed. The legal basis for our decision is founded upon the jurisdictional

Two of the AFSCME petitioners, Helen Floyd and Betty Gill, were denied back pay because, according to the CSC's order, they failed to meet the minimum qualifications for the position of Economic Service Worker III. Rather than simply grant the back pay awards to those petitioners who received them, the Commission ordered retroactive "promotions." Those who did not qualify for such "promotions" received no back pay.

The Commission interpreted our opinion as applying only to the Economic Service Worker class. This interpretation resulted in the denial of back pay to one additional petitioner, Patricia Weaver, who was a Case Aide II, working in a higher classified position as a Social Service Worker I.

### CWA Petitioners

Sandra Perry, initially a petitioner in *AFSCME I*, withdrew from that action on August 2, 1984. Following the remand, however, the Commission awarded Ms. Perry back pay, effective 30 days prior to the filing of her grievance. Upon notification to the Commission that Ms. Perry had withdrawn, the Commission rescinded the back pay order.

Brenda DeLauder was not one of the *AFSCME I* petitioners. She filed a grievance on May 22, 1983, complaining that she was working out of classification and requesting retroactive pay from July of 1979. As in most of the other grievance decisions the Commission found that Ms. DeLauder performed the full range of economic service tasks, but the Commission denied back pay.[4]

Betty Campbell has the distinction of being the only petitioner in either of these consolidated actions who was awarded back pay prior to this Court's order in *AFSCME I*. Ms. Campbell filed her grievance in July of 1983, requesting back pay from the date she became eligible for the position of social service worker. The hearing board recommended that she be awarded retroactive pay effective June 1, 1981. The commission in an order dated June 1, 1984 found that Ms. Campbell should be classified as an Economic Service Worker I, rather than a Case Aide II, and directed that she be given back pay from May 25, 1983 (the date on which the reclassification study was completed) up to, but not including July 1, 1984 (the date on which the new plan was to be implemented).[5]

### III

Respondents contend that mandamus relief should be denied because it is not the appropriate remedy. We disagree.

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a clear legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Syl. pt. 1, *Allen v. State Human Rights Commission*, 174 W.Va. 139, 324 S.E.2d 99 (1984).

" 'A peremptory writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty.'

limitation placed upon the Commission's ability to review demotions as provided by Code 29–6–15. The limitation on our jurisdiction in this regard is expressed as follows: "Any employee in the classified service who is ... demoted after completing his probationary period of service ... may, *within thirty days after such ... demotion* appeal to the commission for review thereof." (Emphasis Supplied) Code 29–6–15.

4. The order denying Ms. DeLauder back pay is dated May 25, 1984, one week earlier than all the other orders. When the Civil Service Commission deferred acting on her grievance, pending the reclassification study, Ms. DeLauder petitioned this Court for a writ of mandamus. The writ was issued on June 12, 1984, directing the Commission to rule.

5. CWA petitioners Perry, DeLauder and Campbell, along with four other CWA members, filed a petition for a writ of mandamus and judicial review shortly after the original *AFSCME I* petition was filed. The initial CWA petition was refused while a decision in *AFSCME I* was pending. The CWA petition was refiled, but not acted upon. Perry, DeLauder and Campbell subsequently filed the petition that we are now reviewing.

Syl. pt. 4, *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612 (1939)." Syl. pt. 3, *Allen v. State Human Rights Commission, supra.*

■ The petitioners legal entitlement to back pay and the respondents' corresponding legal duty to compute the amount of back pay due and ensure that such amount be paid to the petitioners was established in *AFSCME I.*[6]

■ The petitioners have not failed to exhaust other legal remedies. The AFSCME petitioners are now challenging orders denying them fully retroactive awards of pay for the period they worked out of classification. These orders were entered by the CSC following our remand, and are not orders, under *W.Va.Code*, 29–6–15 [1977] relating directly to demotion, dismissal or suspension for more than 30 days. Therefore, *W.Va.Code*, 29–6–15 [1977] does not provide a right of appeal in this instance.

We have previously granted mandamus relief in a case brought to this Court under substantially similar circumstances. In *Drennen v. Department of Health*, 163 W.Va. 185, 255 S.E.2d 548 (1979), we found that a public employee was entitled to back pay and remanded the case to the CSC for a determination of the amount of such back pay. We granted mandamus relief following the remand when the petitioner and the CSC reached an impasse. *Orndorff v. Department of Health*, 165 W.Va. 1, 267 S.E.2d 430 (1980).

Similarly, we have awarded mandamus relief to compel compliance by circuit courts with prior directives of this Court. *State ex rel. McCartney v. Nuzum*, 161 W.Va. 740, 248 S.E.2d 318 (1978); *State ex rel. Emery v. Rodgers*, 138 W.Va. 562, 76 S.E.2d 690 (1953).

■ The CWA petitioners are also entitled to mandamus relief. The right they seek to enforce was not clearly established until this Court's decision in *AFSCME I*. This group of petitioners filed their mandamus petition within a reasonable time after the *AFSCME I* decision was filed by this Court. *See State ex rel. Clark v. Dadisman*, 154 W.Va. 340, 175 S.E.2d 422 (1970); *Harris v. CSC*, 154 W.Va. 705, 178 S.E.2d 842 (1971).

IV

The CSC's conclusion of law that back pay awards could not be granted beyond the thirty-day filing period of *W.Va.Code*, 29–6–15 [1977], is incorrect. By so limiting the awards, the CSC has created a hybrid procedure, grafting the filing requirement applicable in appeals to the date on which grievances were filed. These cases all began as grievances, and neither the DHS nor the CSC at any time interposed an objection that any of the grievances were untimely or not subject to the grievance procedure. It is significant that the CSC, in its brief, concedes that "working out of classification" constitutes a continuing violation, rather than a single event. The applicable filing requirement for grieving in such circumstances is found in CSC Rule 23.06(a):

(a) *First Step*—(Discussion with Immediate Supervisor)—All grievances shall be presented within five (5) working days from the date the grievant first becomes aware of, or should have become aware of, the cause of such grievance. *Where the cause of the grievance is of an ongoing or continuing nature, the grievance shall be presented within five (5) working days of the last occurrence of the cause of grievance.* The aggrieved employee should present his grievance verbally to his immediate supervisor, and if possible, the grievance should be settled through discussion.

---

**6.** Helen Floyd, Betty Gill and Patricia Weaver are entitled to the same relief as the other petitioners. We emphasize that our decision in *AFSCME I* was based on the principle of equal pay for equal work. This principle is to be applied to the actual work performed. Relief will not be denied where work of a higher classification is performed, though the individu-al performing the work lacks the formal qualifications for appointment or promotion to the higher level position. With specific reference to petitioner Weaver, the equal pay for equal work principle applies to the work she performed, although she was not in the Economic Service Worker series. *See AFSCME I, supra*, 174 W.Va. at 222, n. 2, 324 S.E.2d at 365, n. 2.

The supervisor must give his verbal reply to the aggrieved employee within three (3) working days after the grievant presents his grievance. (emphasis added)

The petitioners were not tardy in filing their grievances. They should not now be penalized because the process has been nominally converted into an appeal under *W. Va. Code,* 29–6–15 [1977].

■ Among the potential remedies incorporated into the grievance procedure is that the grievant "be made whole and the cause of the grievance be remedied." CSC Rule 23.06(c)(7). "An administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs." Syl. pt. 1, *Powell v. Brown,* 160 W.Va. 723, 238 S.E.2d 220 (1977).

■ We recognize that there is sometimes less than a clear delineation between various types of personnel actions. *See Adkins v. CSC and PSC,* 173 W.Va. 89, 312 S.E.2d 752 (1984). Thus, a public employee who is subjected to adverse action by the employing agency does not invariably have a clear choice of administrative remedies. The petitioners sought redress through the grievance procedure. Their claims for back pay were ultimately reviewed and decided under *W. Va. Code,* 29–6–15 [1977], based on the assumed synonymy of "working out of classification" and "demotion." [7] Under these circumstances, however, the 30-day filing requirement of *W. Va. Code,* 29–6–15 [1977] has no application. As a matter of law, the CSC incorrectly limited the back pay awards. *W. Va. Code,* 29–6–15 [1977] in no way limits the petitioners' back pay awards in these proceedings.

## V

■ In a final effort to prevent the payment of the back pay awards, the DHS contends that these actions are barred by the sovereign immunity of the State of West Virginia, embodied in Article VI, § 35 of our constitution, which reads:

The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee. [8]

If the sovereign immunity doctrine were applicable in these cases, then the remedy of back pay, available through *W. Va. Code,* 29–6–15 [1977] and CSC Rules and Regulations, may be of doubtful validity. We believe that the enactment of *W. Va. Code,* 29–6–15 [1977] and decisions of this Court in which back pay was awarded to public employees wrongfully suspended, demoted, or dismissed, *Spencer v. CSC,* 173 W.Va. 153, 313 S.E.2d 430 (1984); *Drennen v. Department of Health,* 163 W.Va. 185, 255 S.E.2d 548 (1979); *Bell v. Dadisman,* 155 W.Va. 298, 184 S.E.2d 141 (1971); *Harris v. CSC,* 154 W.Va. 705, 178 S.E.2d 842 (1971); *State ex rel. Godby v. Hager,* 154 W.Va. 606, 177 S.E.2d 556 (1970); *State ex rel. Karnes v. Dadisman,* 153 W.Va. 771, 172 S.E.2d 561 (1970); *State ex rel. Clark v. Dadisman,* 154 W.Va. 340, 175 S.E.2d 422 (1970), flow from an implicit recognition that the sovereign immunity doctrine is not implicated in the context of employee relations where the State, acting through its agents, as an employer, has unlawfully withheld all or a part of an employee's salary. *See Smith v. City of Atlanta,* 167 Ga.App. 458, 306 S.E.2d 720 (1983). The sovereign immunity doctrine is not a bar to recovery of back pay in the cases now before us.

For the foregoing reasons, we conclude that all the petitioners in these two consolidated actions are entitled to the salary

7. On October 1, 1984, the CSC issued a new policy outlining a procedure for complaining about misclassification. The policy was a result of the settlement reached between AFSCME and the CSC. However, at the time the petitioners filed their grievances, the new procedure was not available to them. Without addressing the merits of the new policy, we do find it helpful in drawing a line between "working out of classification" and "demotion."

8. For a thorough discussion of the history and scope of Article VI, § 35, *see Pittsburgh Elevator v. W.Va. Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983).

differential between the classification to which they were appointed and the higher classification in which they were actually working, and they are entitled to be paid such differential for the entire period during which they worked out of classification. The CSC is therefore directed to afford relief to the petitioners in a manner consistent with the principles of this opinion.

Writs, as moulded, awarded.

NEELY, Justice, dissenting:

I respectfully dissent to the broad policy implications of the majority opinion. My disagreement with the majority is predicated exclusively upon the generally observed phenomenon that jobs in higher classifications are not necessarily less attractive than jobs in lower classifications in terms of inherent interest, difficulty, number of hours, or working conditions. At the simplest level, most private soldiers in the infantry would be pleased to assume the duties of full colonels without any increase in pay simply because of colonels' lower mortality rate.

There are, indeed, occasions when workers receive money as direct compensation for long hours, unpleasant working conditions, danger, or difficulty of the work. But, strange as it may seem, this is not usually the pattern in government service. In the seventeen years that I have worked for different governments, it has been my observation that jobs in higher classifications are more attractive than jobs in lower classifications based upon factors entirely unrelated to pay or benefits. Consequently, most employees in government are pleased to accept assignments to jobs in higher classifications than their own formal rating even without the benefit of the higher pay. I agree with the majority, that when a person *does not want* to accept a job above his classification without being reclassified he should not be forced to work in that job. In this case, however, the position of the Civil Service Commission is correct: a person cannot sit back for years working outside of his classification and then, having lulled the government agency into a false sense of security, file a grievance demanding back pay for years before the grievance was filed.

Furthermore, the likely effect of today's decision is to destroy a perfectly legitimate strategy for promotion—namely, willing acceptance by employees of jobs superior to their formal rating so that they may demonstrate competence in those jobs and firmly stake out their claims to them while waiting for positions at higher pay in the table of organization to become available. Many of today's well paid government employees got to their current positions by seeking out responsibility above and beyond their formal classifications and proving their abilities, often in spite of the fact that they lacked paper credentials, such as college diplomas, that would have been required had they applied from outside for the same job.

Consequently, I believe that the better view of the law is that although a person need never work involuntarily outside of his classification, he has a responsibility to bring his reluctance in that regard to the attention of his supervisor and, if an acceptable accommodation cannot be worked out informally, to file a grievance. Thus back pay should begin to accrue only at such point as a worker demonstrates his reluctance to assume the duties of a job in a higher classification unless he is reclassified. Although such a holding might, on occasion, work an injustice, today's majority opinion, by foreclosing existing informal channels for upward mobility, is liable to work a far greater injustice.