479 S.E.2d 619

**Phyllis COPLEY, Petitioner Below, Appellee,**

v.

**DEPARTMENT OF HEALTH AND HUMAN RESOURCES/OFFICE OF HEALTH FACILITY LICENSURE AND CERTIFICATION, Respondent Below, Appellant.**

**No. 23369.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1996.

Decided Nov. 15, 1996.

Robert M. Losey, Huntington, for Appellee.

W. Michael Frazier, Frazier & Oxley, L.C., Huntington, for residents of Sunnyvale.

Charlene A. Vaughan, Senior Assistant Attorney General, Charleston, for Appellant.

PER CURIAM:

The appellant in this proceeding, the West Virginia Department of Health and Human Resources/Office of Health Facility Licensure and Certification, refused to issue a license to the appellee, Phyllis Copley, to authorize her to operate a residential board and care home in Cabell County. Phyllis Copley appealed to the Circuit Court of Cabell County, and the circuit court remanded the case for further development. In the present appeal,[1] the West Virginia Department of Health and Human Resources claims that by remanding the case the circuit court exceeded its scope of judicial review and substituted its judgment in the licensing matter for that of the Department of Health and Human Resources. After reviewing the issues presented and the documents filed, this Court cannot find reversible error. The order of the circuit court is, therefore, affirmed. The Court believes, however, that the circuit court's order does not completely define the further inquiries which are necessary to a proper determination of the issues appropriate to the licensure proceeding and remands with the recommendation that the circuit court's order be reformed to clarify the inquiry to be made before the case is submitted for the additional hearing deemed necessary by the circuit court.

The Office of Health Facility Licensure and Certification (OHFLAC) is a State agency within the West Virginia Department of Health and Human Resources and is authorized to license health facilities in West Virginia. The licensing authority relevant to this action is provided in W.Va.Code § 16–5C–1, et seq., and W.Va.Code § 16–5H–1, et seq., relating to nursing, personal care, and residential board and care homes. As previously indicated, the present case grows out of the filing of an application by Phyllis Copley with OHFLAC to operate a facility called the Sunnyvale Residential Board and Care Home, in Cabell County, West Virginia.

Phyllis Copley, whose full name is Phyllis Anna Sydenstricker Copley, using the name, Anna Sydenstricker, filed a license application for Sunnyvale on or about November 9, 1993.[2] Following the filing, OHFLAC inspected and investigated the Sunnyvale facility and the applicant.

The investigation revealed that, contrary to the representations in the application, the true current surname of the applicant was Copley. That information resulted in the identification of the applicant as a person who had been ordered by OHFLAC in 1988 to discharge residents in a personal care home operated by her because they required the higher level of care provided by a nursing home, rather than the level of care then offered by a personal care home. The investigation further developed the fact that Ms. Copley had later moved to Ohio and cared for at least some of the former residents of her West Virginia home in a facility which she opened in Ohio. Moreover, in 1990, Ms. Copley had been arrested in Lawrence County, Ohio, for alleged offenses related to her care of residents in the Ohio home. She had entered a plea of no contest to the offense of "Aggravated Menacing, Ohio Revised Code Section 2903.21" and had been placed on unsupervised probation by an Ohio municipal court. The terms of her probation prohibit-

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

2. At several points in the record before us, the filing date of Ms. Copley's application for a license is stated to be November 9, 1993. However, the only copy of an application form found in the record is dated June 28, 1993, and sworn to July 31, 1993. Ms. Copley here claims that the application was initially filed prior to the effective date of 64 W.Va.C.S.R. 65, October 1, 1993. 64 W.Va.C.S.R. 65–4.1.1 provides that persons who filed an application for a residential board and care home license prior to that effective date "may continue to operate" such home "until the secretary grants or denies the license."

ed her from operating such a facility for at least two years and, unless licensed by the State of Ohio, for yet a longer term.

The record also discloses that during the course of the investigation, Ms. Copley had meetings with OHFLAC personnel and received written communications regarding a detailed list of deficiencies in the application and in the physical property constituting the home and related to its operation. OHFLAC advised that the deficiencies had to be corrected before a license would be issued. Ms. Copley claims here that she proceeded to address each of the deficiencies identified in those communications. Ms. Copley also claims that by reason of such contacts OH-FLAC was not misled about her true identity, that she received assurances in the process that OHFLAC was making no effort to close her operation, and that OHFLAC intended to assist her in perfecting the application.

However, on August 24, 1994,[3] OHFLAC denied the application for licensure of the Sunnyvale facility a residential board and care home. It also directed Ms. Copley to refrain from operating as a residential board and care home and to discharge all residents of the Sunnyvale facility. The order of August 24, 1994, directed Ms. Copley to close Sunnyvale and incorporated by reference a "complaint" attached to it. The complaint recited that the license applied for was denied upon the following grounds:

1. Sunnyvale Residential Board and Care Home is being operated without a valid license from OHFLAC;

2. Sunnyvale Residential Board and Care Home is owned and being operated by Phyllis A. Sydenstricker Copley;

a. whose license to operate a health care facility in the State of Ohio has been revoked during the previous five (5) years, and

b. who has been arrested for, adjudicated and convicted of a misdemeanor relevant for the provision of care in a health care facility; and

3. There is reason to believe that abuse and incompetent care of residents may occur.

Following receipt of the order, Ms. Copley requested a hearing to contest the denial of her license.[4] A hearing was conducted on November 22, 1994, and it appears that at the hearing there was substantial confusion as to what issues were to be heard. The hearing examiner identified two "preliminary" issues, one, whether Ms. Copley was barred from doing business in Ohio and was convicted of a misdemeanor there relative to the operation of a similar type facility, and, two, whether the application initially was "defalk de facto".[5] He then identified what

---

3. This may have been August 26, 1994. The record is not wholly legible.

4. She sought the hearing pursuant to the provisions of W.Va.Code § 16–5C–6. West Virginia Code § 16–5C–12(a) provides in pertinent part:

(a) Any licensee or applicant aggrieved by an order issued pursuant to sections five [§ 16–5C–5], six [§ 16–5C–6], ten [§ 16–5C–10] or eleven [§ 16–5C–11] of this article shall, upon timely written request, have the opportunity for a hearing by the director at which he may contest such order as contrary to law or unwarranted by the facts or both. All of the pertinent provisions of article five [§ 29A–5–1 et seq.], chapter twenty-nine-A of this Code shall apply to and govern such hearing and the administrative procedures in connection with such hearing.

The administrative rule governing the issuance of such licenses, 64 W.Va.C.S.R. 65 (1993) provides in 64 W.Va. CSR 65–13, that:

Administrative due process and remedies for actions taken under this rule and W.Va.Code § 16–5C–1 et seq. and 16–5H–1 et seq. are as provided in this rule, in said articles of the West Virginia Code, and in Rules of Procedure for Contested Case Hearings and Declaratory Rulings, 64 CSR 1.

The administrative rule last cited provides in CSR § 64–1–4.3 that when a hearing is demanded and not denied by the director, a notice of hearing shall be served on the demanding party stating the date time and place of hearing with "a short plain statement of the matters asserted", essentially the same requirements contained in W.Va.Code § 29A–5–1(a) for hearings in contested cases.

Our examination of the record reveals that notices of the hearing were provided giving the date, time, and place of the hearing but providing no "statement of the matters asserted", in violation of this procedure.

5. Since we find other issues controlling, we make no effort to explore the implication of this term. If the hearing examiner intended to consider the application void ab initio because of errors in it, we reject that approach to the case in the circumstances before us.

he apparently considered the ultimate issue: "[W]hether the Secretary or Director's decision was sound in denying the license".

The attorney for OHFLAC took the position that the sole issues in the case were whether Ms. Copley had a judgment against her relating to the operation of a health facility and whether the Department could deny Phyllis Copley's application on that ground. Specifically, the attorney said:

> Well, as the Department sees it, I agree that the first issue is whether or not there has been a judgment in Ohio against Ms. Copley that barred her from operating a health care facility, and secondly, as I see it, the other issue is whether or not the regulations that have been promulgated by the Department allow the Director to deny Ms. Copley's application here in West Virginia based on the judgment order entered in Ohio and, of course, the Department's arguing the regulations do allow the Director to do that.

On the other hand, Ms. Copley's attorney argued that a conviction did not *ipso facto* require a denial of a license. He said:

> Your Honor, in response to the written and oral motion of the State, I would first respond by stating that the regulations promulgated by the State do not in a mandatory sense require that no hearing be held in this matter, specifically, Regulation 4.3.2. It says that the Secretary may deny a license to an individual who has been adjudicated, arrested for a misdemeanor felony in relation to the operation of a home but it does not say automatically that they must be denied.
>
> The regulations go on to require that on a case-by-case basis the State will assess the seriousness of the offense as well as the type and frequency of the offense.

After hearing these remarks, the hearing examiner precluded Ms. Copley's attorney from introducing evidence relating to the ongoing operation of the Sunnyvale facility.

During the hearing, the Department offered into evidence what it considered to be Ms. Copley's fraudulent application. It also introduced an employee census form, a statement of deficiencies, and certified copies of the Ohio complaint and judgment order against Ms. Copley. As noted above, the judgment order indicated that Ms. Copley had entered a plea of "no contest" to the Ohio charge. Additionally, Sarah Daubman, Residential Board and Care Home Program Manager of OHFLAC, testified. Her testimony focused on Ms. Copley's past criminal conviction in Ohio.

Following the hearing, the hearing examiner issued a "recommendation" that the original order of OHFLAC, denying a license and closing Sunnyvale, be upheld. The recommendation included "findings of fact and conclusions of law". It stated that the issue addressed at the hearing was "[w]hether there is sufficient evidence to support the Order of August 24, 1994 which denied the application [sic] the Petitioner ... for licensure as a residential board and care home and further Orders the facility to discharge all residents." Upon receipt of this recommendation, the Secretary of the Department of Health and Human Resources issued an administrative decision in which she affirmed the order of August 24, 1994.

As previously indicated, Ms. Copley appealed that decision to the Circuit Court of Cabell County, and the circuit court, by order entered on October 23, 1995, remanded the case for additional development. In the order remanding the case, the circuit court stated:

> 1. The Court hereby grants the Petition and Sunnyvale shall continue to operate as a residential board and care home, without further need for outside supervision at this time, and
>
> 2. The Court further finds that the Hearing Examiner abused his discretion in failing to take into consideration the needs and best interests of the residents; and
>
> 3. The Court further finds that the petitioner Phyllis Copley improperly and without justification filed a false application with the Department; and
>
> 4. The Court hereby remands this matter to the hearing examiner for purposes of determining what an appropriate sanction, fine or punishment for Ms. Copley would be for violating the requirement of filing an honest application; and

5. The Court hereby directs the hearing examiner to make recommendations to this Court regarding appropriate periods of probation or supervision during any periods of probation for Ms. Copley and/or Sunnyvale Residential Board and Care Home, and the method by which a re-evaluation would be handled after the conclusion of any imposed probationary period.

It is from this order that OHFLAC now appeals, contending that the circuit court exceeded the scope of its judicial review and improperly substituted its judgment for that of OHFLAC.

## STANDARD FOR REVIEW

In appeals from administrative orders, the jurisdiction of the Circuit Court is stated in W.Va.Code § 29A–5–4(g), as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Upon our review of circuit court orders in administrative law matters, we interpret administrative rules *de novo*. As stated in syllabus point 1 of *Appalachian Power Company v. State Tax Department of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995): "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." In approaching findings of fact, we ask whether the findings are supported by competent evidence. We also review *de novo* the conclusions of law and the application of the law to the facts. *See Martin v. Randolph County Board of Education*, 195 W.Va. 297, 465 S.E.2d 399 (1995).

## THE ISSUES AT THE HEARING OF NOVEMBER 22

As noted, there was substantial confusion at the hearing examiner level as to what were the issues to be heard there. We perceive that that confusion resulted in error which fully justifies the decision of the circuit court to remand the case for further development. As we have noted above, W.Va.Code § 16–5C–12(a) provides that any applicant aggrieved by an order denying a license for a residential board and care home may have a hearing, at which the applicant may contest the order as contrary to law or unwarranted by the facts or both.

Accordingly, the hearing of November 22, 1994, was properly concerned with whether the grounds upon which a license was denied to Ms. Copley in the director's order of August 24, 1994, were contrary to law or unwarranted by the facts or both. Those grounds were explicitly set forth in the August 24 order, as quoted above.[6]

The order of August 24, 1994, recites that Ms. Copley's license to operate a health care facility in the State of Ohio was revoked during the previous five years. We find that this assertion is wholly without support in the record and is clearly wrong. The record reveals that the licensure provisions of the Ohio Code [7] for facilities such as Ms. Copley apparently operated there did not become

---

6. On the record before us, it appears that the notice of hearing failed to specify the matters to be heard, as required by W.Va.Code § 29–5–1(a) and the applicable administrative rule. In the circumstances before us, we do not consider that omission critical because W.Va.Code § 16–5–C–12 expressly states the issue to be addressed at such a hearing. The better practice would be for the agency to state the issues to be addressed, in accord with statute and their own regulation. We note that, in other circumstances, the failure so to do may be jurisdictional.

7. Ohio Revised Code Annotated § 3722.01 et seq.

effective until at least November, 1990. The deficiencies of Ms. Copley's operation of which OHFLAC complains occurred on or before that date, as shown by the Ohio complaints dated June, 1989. The essence of the probation order in the Ohio case was to require that Ms. Copley not operate such a facility; the probation order did not revoke her license.

■ The order of August 24, 1994, states as a further ground for denying Ms. Copley a license, that she had been "arrested for, adjudicated and convicted of a misdemeanor relevant for the provision of care in a health care facility". The record before us reveals that Ms. Copley had indeed been arrested for such a misdemeanor and, upon a no contest plea, had been convicted of such a misdemeanor. A portion of the administrative rules and regulations governing the consideration of Ms. Copley's license application, 64 W.Va.C.S.R. 65–4.3 and its subdivisions, relevant to the finding under discussion provides:

> 4.3.2. The secretary may deny a license if an applicant is found to be irresponsible or unsuitable to operate, direct, or participate in the operation of a residential board and care home as evidenced by the following reasons:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 4.3.2.2. If an applicant, and, if applicable, operator, is found to have been arrested for, adjudicated, or convicted of any felony or of a misdemeanor relevant for the provision of care in a health care facility or for operating a health care facility, in which case the secretary shall, on a case by case basis, assess the seriousness of the offense, as well as the type and frequency of the offense; . . . .

Although the Ohio arrest and conviction of Ms. Copley may be relevant under this, the regulation requires that the seriousness of the offense, its type and frequency be considered. The order in the present case does not demonstrate that such an assessment was made. Moreover, upon the hearing later had before the hearing examiner, he found, contrary to the regulation, that "it is not necessary to determine the seriousness of the Ohio Judgment". An examination of the record thus shows that Ms. Copley's Ohio conviction was used as a ground to deny her license application, without more, in violation of the regulation requirement that its seriousness, type and frequency be considered. It also appears that the hearing examiner refused to address the propriety of this action, even though it was appropriately an issue in Ms. Copley's appeal.

It has been recognized rather consistently in this State that "[a]n administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs." Syllabus point 1, *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977). *See also Burns v. Dials*, 180 W.Va. 623, 378 S.E.2d 665 (1989); *American Federation of State, County and Municipal Employees v.C.S.C. of West Virginia*, 176 W.Va. 73, 341 S.E.2d 693 (1985); *State ex rel. Wilson v. Truby*, 167 W.Va. 179, 281 S.E.2d 231 (1981); and *Trimboli v. Board of Education of Wayne County*, 163 W.Va. 1, 254 S.E.2d 561 (1979).

The Court believes that by denying Ms. Copley's license application without addressing the seriousness, type and frequency of Ms. Copley's Ohio offense, the secretary and hearing examiner violated the department's own regulation and the requirement of syllabus point 1 of *Powell v. Brown, supra.*

■ Another ground for denying Ms. Copley a license set forth in the order of August 24, 1994, is that Sunnyvale Residential Board and Care Home was being operated by Ms. Copley without a valid license. The record discloses that, at the time this finding was made, only some ten licenses had been issued and as many as two hundred homes were then operating in the State without a license. The record further discloses that although the underlying licensing statute was last amended in 1989, the implementing rules and regulations upon which OHFLAC here relies were not effective until October 1, 1993. We note further that in *Wolford v. Lewis*, 860 F.Supp. 1123 (S.D.W.Va.1994), the secretary agreed to further revise these rules no later than June, 1994, to accommodate inadequacies in the rules found by the court there and that those revisions are not, as of the date of this opinion, adopted. In all these circumstances, we find that, as a ground for the

denial of the license, the operation of such a facility without a license was arbitrary and capricious. While we do not intend by this finding to condone the open and continuous operation of such a facility without a license, and encourage the secretary to promptly require licenses of persons operating such homes, the equal application of the sanction of denying a license for past transgression of this statute would likely result in the closure of the vast majority of such facilities throughout the State. In that light, we will not allow this straw to be grasped to support the denial of a license to Ms. Copley or others similarly situated. Further, we note that one part of the 1993 rules, 64 W.Va. C.S.R. 65–4.1.1, provides that any person who filed an application for a residential board and care home license with the secretary prior to the effective date of the rule (October 1, 1993) may continue to operate without a license until the secretary grants or denies the license. Since it is not clear from the record whether Ms. Copley first filed a license prior to that date, we cannot determine if that provision of the rules is applicable to her. However, if such an application was filed before the effective date of the regulations, its filing would provide another basis upon which the finding under discussion should be rejected.

■ There remains one finding in the order of August 24, 1994 to be examined: "There is reason to believe that abuse and incompetent care of residents may occur." We note that the applicable regulation, 64 W.Va.C.S.R. 65–4.3.2, provides that a license may be denied if an applicant is found to be irresponsible or unsuitable to operate a residential board and care home where the applicant's history shows that there is reason to believe that abuse, incompetent care, or exploitation of residents may occur or where the applicant has had a license denied or revoked during the previous five years. Moreover, 64 W.Va.C.S.R. 65–5.2.3 requires that the administrator of such a home shall be of good moral character and directs that in assessing moral character, the secretary may consider evidence of abuse, fraud, or convictions within the previous five years of a crime relevant for the provision of care to a dependent population.

From a review of the evidence in the record before us, we believe that there may have been some evidence, or perhaps sufficient evidence, adduced before the hearing examiner to support this finding. We note that the record contains an long list of deficiencies found during the March, 1994 inspection of Sunnyvale, some of which may relate to this finding and which may remain uncorrected. Likewise, we find in the record evidence that Ms. Copley has, on occasion, disregarded proper procedures in the care of residents. This is particularly evident with respect to the events surrounding the 1988 order to close, where it was found that persons needing nursing home care were being housed in a home suitable only as what was then a personal care home. We are unadvised as to the actual circumstances surrounding the Ohio conviction relating to the care of residents such as those now at Sunnyvale, but surmise that those circumstances may bear on Ms. Copley's suitability for a license.

Although it would seem self-evident that criminal violation of a law such as that involved in Ms. Copley's Ohio conviction should *ipso facto* render one ineligible to operate a home, the Court believes that there may be violations so technical and so minor that they would not render one ineligible. In fact, while the record in the present case does show that Ms. Copley was convicted of an offense in Lawrence County, Ohio, the Ohio court placed Ms. Copley on probation and suggested that in the future she could operate a facility but that she should "not operate a Personal Care Facility, in Lawrence County, Ohio, without appropriate state license." Moreover, the applicable regulations require the evaluation of seriousness, type and frequency of the offense, as we have previously discussed. Accordingly, we are of the opinion that the Ohio offense is simply a factor to be considered and evaluated in the licensing process. Further, the Court notes that recently we held in syllabus point 4 of *West Virginia University Board of Trustees v. Fox*, 197 W.Va. 91, 475 S.E.2d 91 (1996), that:

When a court or administrative body is asked to recognize a conviction as an ad-

mission of guilt of particular acts, the court must look behind the conviction to determine whether it was based upon a trial on the merits or upon a plea of no contest. Where the conviction was based upon a plea of no contest, it may not be considered an admission of guilt of particular acts.

In the present case, Phyllis Copley's Ohio conviction was clearly based on a plea of "no contest". Therefore, the facts underlying the conviction may be relied on in making an evaluation of moral character, if those facts are proved by evidence independent of the judgment of conviction.

■ We have also reviewed the findings by the hearing examiner and the circuit court that Ms. Copley filed a false, misleading application. We believe that the filing of a misleading application is a factor to be considered with respect to the issuance of a license and that the circuit court is correct in asserting that the filing of such an application may be the basis for some other less drastic sanction or penalty. We also note in this connection that Ms. Copley asserts that OHFLAC was not misled by her application. Taking all of this into account, we conclude that Ms. Copley's conduct in the preparation of the application is yet another factor to be considered in the licensing process and is not alone a basis for denying the particular application.

On the other hand, there appears to be evidence adduced or proffered below that might lead to a conclusion that, notwithstanding contrary evidence, Ms. Copley is both responsible and suitable to operate such a facility as is at issue here. We have examined the photographs of the home found in the record and find evidence of a clean, well-run facility. We have read the affidavits proffered in the record from relatives of residents in the home, evidencing excellent care. We note that the remand order entered by the circuit court directed that additional evidence be taken regarding the welfare of the residents. We consider Judge O'Hanlon's directive to be fully consistent with the purposes of the licensing procedure as stated in 64 W.Va.C.S.R. 65–1.1, which provides:

> Scope.—This legislative rule prescribes specific standards and procedures to provide for the health, safety, and protection of the rights and dignity of residents of residential board and care homes.... [8]

This Court believes that the actual effect of the circuit court's order of remand is to require, among other things, the full development of the record on the issue of irresponsibility and unsuitability.

## SUMMARY

We have concluded that only two of the grounds for denying the license stated in the order of August 24, 1994, survive scrutiny. Those issues, which we have also concluded must be further developed, are (1) whether Ms. Copley is irresponsible or unsuitable to operate a residential board and care home, and (2) whether the facts underlying the Ohio conviction are probative of the issue of good character after assessing the seriousness, type and frequency of the offense. We

8. This rule reflects the purpose of the Legislature in authorizing the licensing of residential care homes as set forth in W.Va.Code § 16–5C–1, which states:

It is the policy of this State to encourage and promote the development and utilization of resources to ensure the effective care and treatment of persons who are convalescing or whose physical or mental condition requires them to receive a degree of nursing or related health care greater than that necessary for well individuals, but not so acute as to require hospitalization. Such care and treatment requires a living environment for such persons which, to the extent practicable, will approximate a normal home environment. To this end, the guiding principle for administration of the laws of the State is that such persons shall be encouraged and assisted in securing necessary care and treatment in noninstitutional surroundings. In recognition that for many such persons effective care and treatment can only be secured from proprietary, voluntary and governmental nursing homes or personal care homes it is the policy of this State to encourage, promote and require the maintenance of institutions other than hospitals offering nursing or related health care or personal care so as to ensure protection of the rights and dignity of those using the services of such facilities.

The provisions of this article are hereby declared to be remedial and shall be liberally construed to effectuate its purposes and intents.

recognize that the assessment of Ms. Copley's character is part and parcel of the development of the issue of whether she is a responsible and suitable operator, to be evaluated in light of all the evidence to be developed, including her past history and the current status of her operation, as required by the circuit judge's order here appealed.

For the reasons stated, the judgment of the circuit court is affirmed. We direct that before this case is actually resubmitted to the hearing examiner for further development, that the circuit judge clarify his remand order to insure that the precise issues remaining to be determined are fully developed, and that the case decided below in a manner consistent with the principles set forth herein.

Affirmed.