**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 8, 2013**

# In the Court of Appeals of Georgia

A13A0694. FULTON COUNTY v. LORD et al.

A13A0695. LORD et al v. FULTON COUNTY.

A13A1605. FULTON COUNTY v. LORD et al.

DILLARD, Judge.

In 2006, Georgia Lord and twenty two other Judicial Staff Attorneys ("law clerks") employed by the Superior and State Courts of Fulton County filed a grievance against Fulton County, pursuant to the County's civil-service policies, claiming that they were unfairly paid less than the staff attorneys employed by the County Attorney's office ("CASAs"), despite performing similar work. Ultimately, the grievance was submitted to arbitration, also pursuant to the County's policies, in which the law clerks prevailed and were awarded injunctive relief and back pay. A superior court confirmed the award, and the County now appeals.

In Case No. A13A0694, the County contends that the superior court erred in confirming the arbitration award, arguing that the award of back pay was barred by the doctrine of sovereign immunity. The County further contends that the court erred in denying the County's request for relief from a stipulation as to damages. In Case No. A13A0695, the law clerks cross-appeal, arguing that the court erred in stating that the County had to achieve pay parity between the law clerks and the CASAs as of the date of the court's confirmation order instead of the date of the arbitration award. And in Case No. A13A1605, the County contends that the trial court erred in granting the law clerks' motion for sanctions under OCGA § 9-15-14.

For the reasons set forth *infra*, we affirm in Case Nos. A13A0694 and A13A1605. However, because we agree that the superior court's confirmation order should have stated that the County had to achieve pay parity as of the date of the arbitration award, in Case No. A13A0695, we vacate that portion of the order and remand the case to the superior court for further proceedings consistent with this opinion.

The record shows that in 1995, the County hired a consulting firm to perform an in-depth "job and pay classification study" in order to assist the County in developing a comprehensive compensation system. In 1997, the consulting firm's

2

study and classification system was adopted by the County Commission. Under this system, CASAs and judicial law clerks received an identical pay grade (C-42) and job classification code (Attorney, Staff - 606022). Also pursuant to the study, the County adopted a concept designated as "premium pay" to address situations in which particular job classifications received less compensation than similar positions outside of County employment. But while the consulting firm's study found that the 606022 classification as a whole was compensated 36 percent less than similar non-County positions, the County Commission awarded premium pay to CASAs but not to the law clerks. As a result, CASAs received significantly more in salary than the law clerks.

In 2005, the County Commission eliminated "premium pay" but created a new pay scale for licensed professionals, which it designated as "Schedule B." Under Schedule B, CASAs continued receiving the 36 percent premium pay. And although Schedule B did not change the fact that CASAs and law clerks were designated with the same job classification and did not indicate any substantive changes in the job responsibilities of either position, the law clerks were not included in Schedule B and, thus, continued to receive approximately 36 percent less in salary than the CASAs.

In 2006, the law clerks filed a group-pay grievance pursuant to the rules governing the County's civil-service system. Specifically, the law clerks claimed that they were not receiving "equal pay for equal work," as required by the County's personnel regulations, in light of the fact that the CASAs received approximately 36 percent (nearly $20,000) more in annual salary and despite being in the same job classification and performing equivalent duties. Consequently, the law clerks sought an end to this pay disparity, including back pay. For over two years thereafter, the law clerks' grievance was not heard, despite the fact that County Policy ("P&P") § 100-24 provided that grievances may be filed to resolve "Classification and pay issues." This policy notwithstanding, the County's Grievance Review Committee ("GRC") claimed the issue was not subject to grievance procedures because the proper remedy was to seek a salary reclassification through the Personnel Board. However, the Personnel Board similarly refused to hear the law clerks' grievance. Ultimately, the law clerks filed a writ of mandamus in the Superior Court of Fulton County.[1] The court granted the writ, ruling that the law clerks had a right to have their grievance heard, a right

---

[1] Although filed in the Superior Court of Fulton County, the County filed a motion to recuse the judges of that court, and the matter was transferred to a judge of the Superior Court of DeKalb County, who was designated to hear this issue as well as the later confirmation of the arbitration award.

4

to appeal the GRC's decision to the County Manager, and a right to seek arbitration pursuant to County policies.

In November 2009, the GRC heard the law clerks' grievance and denied the claim five months later. The County Manager upheld that decision, and, thereafter, the law clerks commenced arbitration. The parties then agreed to an arbitrator, who directed the law clerks to file a demand for arbitration and the County to file an answer. In their demand, the law clerks alleged that the arbitrator had jurisdiction over the matter and sought relief for the County's violation of law and breach of contract (*i.e.*, an end to the pay disparity and a recovery of back pay). The County answered, and discovery ensued.

After discovery concluded, the arbitrator scheduled a hearing on whether the County was liable for the pay disparity, pursuant to an earlier agreement between the parties that liability would be determined in phase one of the proceedings and damages would be determined, if necessary, in phase two. The hearing was held on June 13 and 14, 2011, during which the arbitrator heard evidence regarding the County's job classification and compensation system, as well as evidence regarding the CASAs and law clerks' job duties. And on August 25, 2011, the arbitrator issued

an award in favor of the law clerks, ruling that the County had violated its own policies and ordinances by paying the law clerks less than it paid CASAs.

A few weeks later, at a status conference that had been scheduled to discuss various aspects of the damages issue, the County announced that it was considering whether to assert that the doctrine of sovereign immunity barred the law clerks' claim for back pay. The arbitrator ordered the parties to brief the issue and ultimately scheduled a hearing for December 2, 2011. Prior to this hearing, the parties apparently resolved the damages issue by agreement and stipulation to the method for calculating back pay, benefits, and interest. Thereafter, the hearing on the County's sovereign-immunity defense was held, and a few weeks later, on December 29, 2011, the arbitrator issued an order ruling that sovereign immunity did not bar the law clerks' claim for back pay. On that same day, the arbitrator issued a final award in favor of the law clerks, which included $4,354,692.90 for back pay and prejudgment interest from the date of the award to the entry of judgment.

On January 11, 2012, the law clerks filed a motion to confirm the arbitration award in the superior court. Approximately one month later, the County filed a motion to dismiss the award, or in the alternative, to vacate it, arguing that the law clerks' claim for back pay was barred by the doctrine of sovereign immunity. On July

24, 2012, after holding a hearing one month earlier, the superior court denied the County's motion and confirmed the arbitrator's award. Shortly thereafter, the law clerks filed a motion for entry of judgment, in which they argued that, in addition to the arbitrator's award, they were entitled to back pay that accrued during the time period between the entry of the award and the entry of the superior court's judgment. In opposing that motion, the County—for the first time—argued that the calculations for back pay, to which they had previously agreed and stipulated to during the arbitration proceedings, were "grossly inflated." And during a hearing on the matter, the County argued that the stipulation was the result of a mistake.

Nevertheless, on August 30, 2012, the superior court entered judgment on the confirmed award but did not include the accrued post-award back pay that the law clerks requested. Not long thereafter, the law clerks filed a motion seeking attorney fees pursuant to OCGA § 9-15-14. The superior court granted the motion and awarded the law clerks $94,557.50 in attorney fees. These appeals follow.

*Case No. A13A0694*

At the outset, we note that the purpose of Georgia's Arbitration Code is to allow participating parties "to obtain an expeditious and final resolution of disputes

7

by means that circumvent the time and expense associated with civil litigation."[2] To achieve that purpose, our Arbitration Code "places strict limits on the scope of a trial court's review of an arbitrator's award *and on any subsequent review by an appellate court.*"[3] In fact, the Code "requires courts give extraordinary deference to arbitration awards and commands that a trial court shall confirm an award upon application of a party made within one year after its delivery to the party, unless the award is vacated or modified by the court as provided in the Arbitration Code."[4] Toward that end, OCGA § 9-9-13 (b) "lists five grounds for vacating arbitration awards, and these statutory grounds provide the *exclusive* bases for vacatur."[5] Specifically, that statute provides as follows:

> The award shall be vacated on the application of a party who . . . participated in the arbitration . . . if the [trial] court finds that the rights of that party were prejudiced by:

---

[2] *Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 299 Ga. App. 614, 617 (1) (683 SE2d 40) (2009) (punctuation omitted).

[3] *Id.* (emphasis supplied) (punctuation omitted).

[4] *Id.* (footnote and punctuation omitted); *see* OCGA § 9-9-12.

[5] *Brookfield Country Club, Inc.*, 299 Ga. App. at 617 (1) (footnote omitted); *see Greene v. Hundley*, 266 Ga. 592, 594-95 (1) (468 SE2d 350) (1996).

8

(1) Corruption, fraud, or misconduct in procuring the award;

(2) Partiality of an arbitrator appointed as a neutral;

(3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made;

(4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or

(5) The arbitrator's manifest disregard of the law.[6]

Additionally, our Arbitration Code also directs that "[t]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."[7]

In the case *sub judice*, only manifest disregard of the law is at issue. But it is important to note that in the arbitration context, "the concept of manifest disregard has never been the equivalent of insufficiency of the evidence or a misapplication of

---

[6] *See* OCGA § 9-9-13 (b).

[7] OCGA § 9-9-13 (d).

the law to the facts."[8] Indeed, it is a much narrower standard, "requiring a showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it."[9] Moreover, an arbitrator that incorrectly interprets the law has not manifestly disregarded it, but "has simply made a legal mistake."[10] With these guiding principles in mind, we turn now to the County's specific claims of error.

1. The County contends that the superior court erred in denying its motion to dismiss the law clerks' motion to confirm the arbitration award. Specifically, the County argues that the law clerks' claim for back pay is barred by the doctrine of sovereign immunity and, therefore, that the arbitrator's failure to rule accordingly constituted a manifest disregard of the law. We disagree.

---

[8] *Brookfield Country Club, Inc.*, 299 Ga. App. at 620 (3) (punctuation omitted).

[9] *Id.* at 620-21 (3) (punctuation omitted).

[10] *America's Home Place, Inc. v. Cassidy*, 301 Ga. App. 233, 235 (2) (687 SE2d 254) (2009) (punctuation omitted); *see ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 309 (647 SE2d 574) (2007).

As this Court has previously noted, "sovereign immunity is a threshold issue."[11] And it is, of course, well established that "the sovereign cannot be sued in its own courts, or in any other court, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals."[12] In fact, pursuant to our Constitution, except as specifically provided therein, "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."[13] Importantly, the Supreme Court of Georgia has held that our Constitution's "reservation of immunity to the state or any of its departments or agencies include[s] the counties of the State of Georgia."[14] Nevertheless, our Constitution has specifically waived the

---

[11] *Reidling v. City of Gainesville*, 280 Ga. App. 698, 701 (1) (634 SE2d 862) (2006) (punctuation omitted); *see also Albertson v. City of Jesup*, 312 Ga. App. 246, 248 (718 SE2d 4) (2011) (holding that "sovereign immunity is a threshold issue that the trial court was required to address before reaching the merits of any other argument.").

[12] *DeKalb County School Dist. v. Gold*, 318 Ga. App. 633, 636 (1) (734 SE2d 466) (2012) (footnote and punctuation omitted).

[13] Ga. Const. Art. I, Sec. II, Para. IX (e).

[14] *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994) (punctuation omitted).

State's sovereign immunity for "any action ex contractu for the breach of any written contract."[15]

Putting aside whether the County's personnel regulation specifically allowing for arbitration of its employees' pay grievances in and of itself constituted a waiver of sovereign immunity, the law clerks' claim for back pay here sounds in contract and, therefore, is not barred by sovereign immunity. Indeed, there is a definite contractual relation "between every employee and employer whether the employee is a public officer or not."[16] And the payment of salary to government employees "is a perfunctory administrative duty not included under the category of government functions and not barred by any statutory immunity."[17] Moreover, to bar government employees from recovering pay for services they performed by allowing their government employer to claim immunity "would violate the prohibition against the impairment of a contract which is found in both the State and Federal

---

[15] Ga. Const. Art. I, Sec. II, Para. IX (c).

[16] *Undercofler v. Scott*, 220 Ga. 406, 410 (2) (139 SE2d 299) (1964); *see Smith v. City of Atlanta*, 167 Ga. App. 458, 461 (2) (306 SE2d 720) (1983) (acknowledging that city firefighter's claim for back pay sounded in contract).

[17] *Willis v. City of Atlanta*, 265 Ga. App. 640, 643 (2) (595 SE2d 339) (2004) (punctuation omitted).

12

Constitutions."[18] Thus, the law clerks' claim against the County for back pay is not barred by the doctrine of sovereign immunity.[19] And under these circumstances, the County certainly has not demonstrated that the arbitrator deliberately ignored applicable law.[20] Accordingly, the trial court did not err in denying the County's motion to dismiss the law clerks' motion to confirm the arbitration award.

2. The County also contends that the superior court erred in denying the County's request for relief from a stipulation that it entered into as to the manner by

---

[18] *Smith*, 167 Ga. App. at 461 (2).

[19] *See Deason v. DeKalb County*, 222 Ga. 63, 65 (1) (148 SE2d 414) (1966) (holding that police officer's claim against county for back pay sounded in contract and was not barred by county's immunity); *Willis*, 265 Ga. App. at 643 (2) (holding that city employee's claim for back pay sounded in contract and was not barred by city's assertion of sovereign immunity, although grant of summary judgment in city's favor was correct for other reasons); *Smith*, 167 Ga. App. at 461 (2) (holding that firefighter's claim for back pay sounded in contract and was not barred by city's immunity). *Cf. Gold*, 318 Ga. App. at 642-43 (3) (holding that teachers' claim against county for retirement benefits sounded in contract and was not barred by sovereign immunity); *Alverson v. Employees' Retirement System of Ga.*, 272 Ga. App. 389, 391-92 (1) (b) (613 SE2d 119) (2005) (holding that state employees' claim challenging state's method of calculating employees' pensions sounded in contract and was not barred by sovereign immunity).

[20] *See Brookfield Country Club, Inc.*, 299 Ga. App. at 621 (3). *Cf. Ralston v. City of Dahlonega*, 236 Ga. App. 386, 390-91 (6) (512 SE2d 300) (1999) (reviewing city's assertion of sovereign immunity as a bar to arbitration award pursuant to the manifest disregard of the law standard).

which to calculate the law clerks' back pay, arguing that its agreement to this stipulation was the result of a mistake. The County further argues that the award of back pay is void because it violates the Gratuities Clause of the Georgia Constitution.[21] These arguments lack merit.

Similar to OCGA § 9-9-13 (a), which requires a party seeking to vacate an arbitration award to file such an application within three months,[22] OCGA § 9-9-14 (a) provides that: "[a]n application to modify the award shall be made to the court within three months after delivery of a copy of the award to the applicant." Here, as previously noted, the arbitrator issued its final award in favor of the law clerks on December 29, 2011, and the law clerks filed their motion to confirm the award in the superior court on January 11, 2012. The superior court then confirmed the award on July 24, 2012. But the County made no mention of the alleged mistake regarding the stipulation for calculating back pay and the consequent need to reduce the award until the August 13, 2012 hearing on the law clerks' motion for an entry of judgment. Thus, the County did not request to modify the arbitrator's award until eight months

---

[21] *See* Ga. Const. Art. III, Sec. VI, Para. VI (a).

[22] *See* OCGA § 9-9-13 (a) ("An application to vacate an award shall be made to the court within three months after delivery of a copy of the award to the applicant.").

14

after it was issued and nearly one month after it was confirmed. Given these circumstances, the County cannot be allowed to circumvent the statute of limitation governing arbitration awards by now claiming that the award should be modified.[23]

The County further argues that the award of back pay to the law clerks is void because it violates the Gratuities Clause of the Georgia Constitution, which prohibits the General Assembly from granting "extra compensation to any public officer . . . after service has been rendered or the contract entered into."[24] But the County failed to raise this issue before either the arbitrator or the superior court, and therefore, neither ruled on the issue prior to this appeal being docketed.[25] It is well established that "[t]his court is for the correction of errors of law, and where the trial court has

---

[23] *See Cypress Comm., Inc. v. Zacharias*, 291 Ga. App. 790, 794-95 (2) (662 SE2d 857) (2008) (holding that appellant's filing of motion to vacate arbitration of award more than three months after it received award was untimely and, thus, properly denied). *Cf. Galindo v. Lanier Worldwide, Inc.*, 241 Ga. App. 78, 84 (4) (526 SE2d 141) (1999) (holding that a motion to vacate raised as a defense to a motion to confirm an award was untimely based on nearly identical language in the FAA).

[24] *See* Ga. Const. Art. III, Sec. VI, Para. VI (a).

[25] On December 10, 2012, after Case Nos. A13A0695 and A13A0695 were docketed for appeal, the County raised the Gratuities Clause defense for the first time in a response to the law clerks' motion to disallow the County from filing additional evidence pertaining to the stipulation to the calculation of damages issue.

15

not ruled on an issue, we will not address it."[26] Accordingly, the superior court did not err in denying the County's request for relief from the stipulation.

*Case No. A13A0695*

3. In their cross-appeal, the law clerks contend that the superior court erred in holding that the County needed to achieve pay parity between the law clerks and CASAs as of the date of the court's confirmation order rather than the date of the arbitration award. We agree.

In its final award, the arbitrator stated as follows:

With respect to each of the [law clerks'] claims seeking a declaration that [the law clerks] are entitled to parity on an ongoing future basis in salary, pension and other benefits as compared with CASAs, the Arbitrator rules in favor of [the law clerks] and enters this AWARD directing Respondent Fulton County to (i) cease immediately treating the [law clerks] differently than the CASAs with respect to salary, pension and other benefits, and therefore (ii) to establish parity between the [law clerks] and the CASAs concerning salary, pension and other benefits effective as of January 1, 2012.[27]

---

[26] *Cypress Comm., Inc.*, 291 Ga. App. at 795 (3) (punctuation omitted).

[27] The original order set January 1, 2010, as the date for achieving parity; but this typographical error was corrected by consent order.

After confirming the award, the superior court entered its final entry of judgment on August 30, 2012, noting the following in the section of its judgment pertaining to equitable relief: "Pursuant to Arbitrator's Award, Fulton County is hereby ordered, directed and enjoined to *henceforth* maintain parity in salary, pension and benefits of employment between Petitioners, as Judicial Staff Attorneys, and Staff Attorneys employed by the Office of the Fulton County Attorney."[28]

OCGA § 9-9-15 (a) provides that "[u]pon confirmation of the award by the court, judgment shall be entered in the same manner as provided by Chapter 11 of this title and be enforced as any other judgment or decree." And as this Court has recently held, "[w]hen a trial court confirms an arbitration award, the judgment must be entered in conformity with the award."[29] Here, while acknowledging that the superior court's use of the term "henceforth" in its judgment may have been inadvertent, the law clerks nevertheless argue that in doing so, the court moved the effective date by which the County must implement parity from January 1, 2012 to August 30, 2012, and thus entered a judgment that was not in conformity with the arbitrator's award. We agree. Accordingly, we reverse as to this part of the superior court's judgment and

---

[28] Emphasis supplied.

[29] *Kent v. Mitchell*, 319 Ga. App. 115, 116 (735 SE2d 110) (2012).

17

remand the case, so that the court may conform this part of the judgment to the arbitrator's award.

*Case No. A13A1605*

4. The County further contends that the superior court erred in granting the law clerks' motion for attorney fees under OCGA § 9-15-14. Again, we disagree.

OCGA § 9-15-14 (a) provides in part that

[i]n any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position.[30]

Importantly, this part of the Code "provides for a mandatory award of attorney fees."[31] And generally speaking, when we review an award of attorney fees under OCGA § 9-15-14 (a), we do so "under the 'any evidence' standard, a standard that

---

[30] *See* OCGA § 9-15-14 (a).

[31] *Roylston v. Bank of America, N.A.*, 290 Ga. App. 556, 562 (2) (660 SE2d 412) (2008) (punctuation omitted).

18

ordinarily is marked by deference to the way in which the court below assessed the relevant evidence."[32] However,

> whether attorney fees are required under OCGA § 9-15-14 (a) depends in some cases not so much upon an assessment of what we usually mean when we speak of "evidence"—testimony and exhibits and the like—but upon an assessment of the state of the law at the time a party advanced a legal argument that, another party now contends, forms the basis for an award of attorney fees. Such an assessment of the state of the law, we think, itself presents a question of law, and we usually do not defer to trial courts about pure questions of law.[33]

Somewhat similarly, OCGA § 9-15-14 (b) allows the trial court to award fees if "it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct . . . ."[34] And we review subsection (b) awards for abuse of discretion.[35]

---

[32] *Gibson Const. Co. v. GAA Acquisitions I, LLC*, 314 Ga. App. 674, 675 (725 SE2d 806) (2012).

[33] *Id.* at 676.

[34] *See* OCGA § 9-15-14 (b).

[35] *See Fox v. City of Cumming*, 298 Ga. App. 134, 135 (679 SE2d 365) (2009).

Here, the law clerks sought attorney fees pursuant to OCGA § 9-15-14 (a) and (b), arguing, *inter alia*, that in contesting the motion to confirm the arbitration award, the County's argument that the superior court's review to determine if the arbitrator manifestly disregarded the law regarding sovereign immunity was essentially a *de novo* standard of review. The law clerks contend that this argument, in light of the vast amount of precedent to the contrary, demonstrated a complete absence of any justiciable issue of law and lacked substantial justification. The superior court agreed, stating that

> [t]he County's proffered standard would mean that an arbitrator who simply disagreed with one party's legal position would be subject to having rulings overturned under the manifest disregard standard whenever a reviewing court subsequently determined that the ruling was not "correct" under the law. Under this standard, every legal disagreement presented to the arbitrator would have to be reviewed de novo on every motion to vacate. The result would make a mockery of the "extraordinary deference" that must be paid to an arbitrator's determinations and would eliminate the requirement of showing in the record that the arbitrator "expressly disregarded" known, well defined, explicit, and clearly applicable law.

The superior court further found that "[t]he County has shown nothing more than that the Arbitrator disagreed with the County's position," and that "[t]his does not come

20

close to establishing a 'manifest disregard' of the law." Consequently, the court awarded the law clerks $94,557.50 in attorney fees pursuant to OCGA § 9-15-14 (a) and (b).

Given these circumstances, we conclude that the superior court was authorized to award attorney fees to the law clerks under OCGA § 9-15-14 (a) and (b). Indeed, the County's argument in the superior court that it satisfied its burden of showing manifest disregard merely by demonstrating that it made the arbitrator aware of the proper legal analysis of the sovereign-immunity issue and that the arbitrator failed to apply it is not even remotely supported by the significant amount of precedent on this particular issue. Furthermore, as the superior court noted, the County failed to present any evidence that the arbitrator here knew the law on sovereign immunity to be contrary to his award but, nevertheless, ignored it. Thus, the trial court did not err in granting the law clerks' motion for attorney fees pursuant to OCGA § 9-15-14 (a) and (b).[36]

5. Finally, the County contends that the superior court erred in awarding the law clerks attorney fees that were not related to their response to the County's motion

---

[36] *See Roylston*, 290 Ga. App. at 562 (2) (a) (holding that imposition of attorney fees under OCGA § 9-15-14 (a) and (b) was warranted because trial court was authorized to find that plaintiff's claim was frivolous).

21

to dismiss the arbitration award. Specifically, the County argues that the superior court improperly awarded attorney fees related to work on the law clerks' motion to confirm the arbitration award. Once again, we disagree.

It is true that in cases involving OCGA § 9-15-14 (a) or (b), the trial court must "limit the fees award to those fees incurred because of the sanctionable conduct."[37] But here, the billing entries that the County contends were unrelated to the sanctionable conduct were six entries pertaining to the drafting of the proposed confirmation order. And in light of the fact that the confirmation order necessarily addressed the County's sovereign-immunity arguments, we disagree that the subject billing entries were unrelated. Furthermore, given that evidence of the law clerks' attorney fees "was admitted without objection and was neither challenged nor rebutted by [the County], the [superior] court properly exercised its discretion in awarding attorney fees based thereon."[38]

*Judgment affirmed in part and vacated in part and case remanded. Andrews, P. J., and McMillian, J., concur.*

---

[37] *Id.* at 562-63 (2) (a) (punctuation omitted).

[38] *Pineres v. George*, 284 Ga. 483, 483-84 (2) (668 SE2d 727) (2008).