**SECOND DIVISION
ANDREWS, P. J.,
MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 15, 2014**

# In the Court of Appeals of Georgia

A14A0784. DEKALB COUNTY v. KIRKLAND et al.                    MI-103

MILLER, Judge.

Timothy W. Kirkland and Steven L. Pruitt ("the Plaintiffs") sued DeKalb County ("the County") for, inter alia, breach of contract based on the County's refusal to allow the Plaintiffs to use their accrued compensatory time or compensate them for that time. The County filed a motion for summary judgment, asserting that the Plaintiffs' claims were barred by sovereign immunity and the statute of limitations. The trial court denied the County's motion for summary judgment, and the County appeals.[1] For the reasons that follow, we reverse.

---

[1] The Plaintiffs also sued the County for unjust enrichment, promissory estoppel, and attorney fees. The trial court dismissed the Plaintiffs' claims for unjust enrichment and promissory estoppel, finding that the County had not waived sovereign immunity as to those claims, and granted the County's motion for summary judgment as to the Plaintiffs' claims for attorney fees under OCGA § 13-6-11. The

"Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We apply a de novo standard of appellate review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Footnote omitted.) *Community Marketplace Properties, LLC v. SunTrust Bank*, 303 Ga. App. 403, 404 (693 SE2d 602) (2010).

So viewed, the evidence shows that Kirkland began working for DeKalb County Fire Rescue Department ("DCFR") in 1988. Pruitt began working for DCFR in February 1989. Neither had a written contract of employment.

DCFR created a volunteer K-9 Search and Rescue Team and provided team members with food and veterinary care for the dogs. Volunteer K-9 handlers were responsible for housing and training their dogs, in addition to their regular DCFR duties. On or about May 7, 2003, DCFR began awarding 24 hours of compensatory time per month (firefighters normally work 24-hour shifts) to K-9 handlers to compensate them for the hours they spent training, housing and caring for their dogs. Prior to that time, K-9 handlers received additional compensation rather than compensatory time.

Plaintiffs did not file a cross-appeal challenging these rulings.

In 2000, Kirkland volunteered to join the K-9 team and in 2004, Kirkland was promoted to the position of captain. Pruitt was promoted to captain in 2003 and became a volunteer K-9 handler in 2008. Fire captains in the County are overtime-exempt employees, and upon promotion to captain, Kirkland and Pruitt understood that they were no longer eligible to receive overtime wages, but remained eligible to receive compensatory time. Overtime-exempt employees were not eligible to receive cash compensation for compensatory time and had to use accrued compensatory time within one year. Code of DeKalb County, § 20-161 (c).

Effective July 31, 2010, DCFR discontinued the monthly award of 24 hours of compensatory time to K-9 handlers. The K-9 team was disbanded in October 2010.

DCFR employees below the rank of captain who had more than 480 hours of accrued compensatory time were able to receive compensation for accrued hours in excess of 480 hours prior to be being promoted to captain.[2] In March 2004, at the time

---

[2]    The County Code provides:

> (a) . . . Time worked in excess of the standard workweek, which is approved by the department head in advance or in cases of emergency as determined by the department head, shall be credited as overtime. . . . Compensatory time at the rate of one and one-half (1½) hours for every hour worked

of his promotion, Kirkland had only approximately 100 hours of accrued compensatory time. Also, at that time, Kirkland was informed (incorrectly) that his previously accrued compensatory time would not be affected by his promotion.

On or about October 25, 2005, DCFR issued a memorandum to employees regarding the accrual and use of compensatory time. The memo stated that employees, including Plaintiffs, could not accrue more than 480 hours of compensatory time, and overtime-exempt employees were to track their own accrued hours.

The County's personnel policies require that a firefighter's request for time off, whether using compensatory time or annual leave, be made to a battalion chief, in writing, and each battalion chief has to consider DCFR staffing needs when reviewing an employee's request for time off. Code of DeKalb County, §§ 20-161 (b);

> in excess of the applicable standard workweek may be given to employees eligible for overtime compensation in lieu of cash compensation.
>
> (b) Eligible law enforcement, emergency medical, fire and seasonal employees may accrue up to four hundred eighty (480) hours of compensatory time before overtime compensation must be paid in cash. . . .

Code of DeKalb County, § 20-161.

4

20-165 (d). According to Kirkland's own records, he used some accrued compensatory time in 24-hour increments each year from 2003 through 2010. Although Kirkland was able to use some of his compensatory time, other requests to use compensatory time were denied because of DCFR's staffing needs.

On or about September 11, 2009, the County's Chief Executive Officer issued a memo to department heads indicating that for overtime-exempt employees, compensatory time had to be used within one calendar year of the date that it was accrued and no cash payment would be given for unused compensatory time. Kirkland deposed that until receipt of this memo he understood that there were no time limits on the use of compensatory time.

That same month, Kirkland was notified that he had zero hours of accrued compensatory time. Kirkland sent a memo to the Chief Operating Officer seeking clarification of the compensatory time policies that applied to him. In July 2010, Kirkland sent a letter to his supervisors, indicating that his records showed that he had 1450 hours of compensatory time accrued since 2003, entitling him to cash payment for his accrued hours in excess of 480 hours. The County payroll supervisor advised Kirkland that fire captains were not paid for their accrued compensatory time and that he would have to use his accrued compensatory time in lieu of vacation.

5

In October 2010, Kirkland asked the County to acknowledge that he had 1450 hours of accrued compensatory time "available to use at [his] leisure." That month, the Acting Fire Chief informed Kirkland that under DCFR's policy requiring that leave be used within one year of accrual, Kirkland had 168 hours of accrued compensatory time that had to be used by the end of the year. Kirkland used his accrued time accordingly. Kirkland did not accrue any compensatory time in 2011, and he retired effective January 6, 2012.

Pruitt began accruing compensatory time when he joined the K-9 team in 2008. Pruitt does not recall any time limit on the use of his accrued compensatory time and, until the September 2009 memo stating otherwise, he understood the County's policies to allow him to accrue and maintain compensatory time indefinitely. On October 16, 2010, Pruitt requested to use compensatory time, and his request was denied because his supervisor's records reflected that Pruitt had no accrued compensatory time. Pruitt instead used annual leave to take time off. Pruitt alleges that he accrued 744 hours of unused compensatory time through November 2010. Pruitt is still currently employed with DCFR as a captain.

In June 2012, the Plaintiffs filed suit seeking compensation for their unused compensatory time, leading to the instant appeal.

6

The County contends that the trial court erred in denying its motion for summary judgment on the Plaintiffs' claims for breach of contract. We agree.

> As provided in Georgia's Constitution, sovereign immunity extends to the counties, and a county's sovereign immunity can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver. Under Georgia law, sovereign immunity is an immunity from suit, rather than a mere defense to liability, and, therefore, whether a governmental defendant has waived its sovereign immunity is a threshold issue.

(Citations and punctuation omitted.) *Bd. of Commrs. of Glynn County v. Johnson*, 311 Ga. App. 867, 869 (1) (717 SE2d 272) (2011). Whether sovereign immunity has been waived is a matter of law, which we review de novo. *Savage v. E.R. Snell Contractor, Inc.*, 295 Ga. App. 319, 323 (3) (672 SE2d 1) (2008).

Counties have waived sovereign immunity for any action ex contractu for the breach of a written contract. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c); *Merk v. DeKalb County*, 226 Ga. App. 191 (1) (486 SE2d 66) (1997). As the party seeking to benefit from the waiver, the Plaintiffs have the burden of establishing that the County has waived its sovereign immunity. *Johnson*, supra, 311 Ga. App. at 869 (1).

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate. Each of these essential terms must be certain." (Citations and punctuation omitted.) *Kennedy v. Ga. Dept. of Human Resources Child Support Enforcement*, 286 Ga. App. 222, 224 (1) (648 SE2d 727) (2007); see also OCGA § 13-3-1.

"In Georgia, the construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." (Citation omitted.) *Immel v. Immel*, 298 Ga. App. 424, 426 (680 SE2d 505) (2009).

(a) It is undisputed that neither Kirkland nor Pruitt had a written employment contract with DCFR. Moreover, the Plaintiffs have not identified any written contract promising overtime-exempt employees the use of compensatory time more than one year after accrual and cash payment for unused compensatory time. Nevertheless, the Plaintiffs argue that the County Code constitutes a written contract, defeating the County's claim for sovereign immunity. The County Code, however, does not support the Plaintiffs' argument. The County Code pertinently provides:

*Employees exempt from overtime compensation may be granted compensatory time* at an hour-for-hour rate at the discretion of the department head. *If granted, such compensatory time must be used within one (1) calendar year* of the date granted in accordance with procedures as apply to annual leave as set forth in section 20-165, subsection [(d)]. *Overtime exempt employees are not eligible to receive cash compensation for unused balances.*

(Emphasis supplied.) Code of DeKalb County, § 20-161 (c).

At the relevant times, the Plaintiffs were classified as overtime-exempt fire captains.[3] Based on the clear language of the County Code, the Plaintiffs had to use any compensatory time within one year and were not entitled to cash compensation for any unused time. Code of DeKalb County, § 20-161 (c). The Plaintiffs have not pointed to any alternate written contract that allows them, as overtime-exempt employees, to accrue and use compensatory time indefinitely nor receive compensation for unused compensatory time.[4]

---

[3] Prior to being promoted to captains, the Plaintiffs would have been eligible to receive cash payment for their unused compensatory time if they had more than 480 hours accrued. Code of DeKalb County, § 20-161 (b). At the time of his promotion to captain, Kirkland had only 100 hours of accrued compensatory time. Pruitt did not accrue any compensatory time until after his promotion to captain.

[4] In denying the County's motion for summary judgment, the trial court relied on *Fulton County v. Lord*, 323 Ga. App. 384, 385, 389 (1) (746 SE2d 188) (2013),

9

(b) Nevertheless, in response to the County's argument that the County Code prohibits cash payment of compensatory time and use of compensatory time after one year for overtime-exempt employees, the Plaintiffs respond that as captains, they were not, in fact, overtime-exempt employees under the Fair Labor Standards Act (29 CFR § 541.3 (b) (1)). The Plaintiffs argue that as overtime-eligible employees they were entitled under the County Code to accrue up to 480 hours of compensatory time and entitled to cash payment for any hours accrued over the 480-hour limit.

The Plaintiffs first raised the argument that they were not overtime-exempt employees in an untimely response to the County's motion for summary judgment, and the trial court found that the Plaintiffs were overtime-exempt.

> When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial.

in which this Court held that sovereign immunity did not bar county employees' claims for back pay which were based on written policies promising "equal pay for equal work." However, the holding in *Lord* was based on the premise that "payment of *salary* to government employees is . . . not barred by any statutory immunity." (Footnote omitted; emphasis added.) Id. at 389 (1). The Plaintiffs here are not seeking back pay, but compensation for compensatory time. Moreover, unlike this case, in *Lord*, the county's written policies promised the relief the plaintiffs sought. Id. at 385.

10

OCGA § 9-11-56 (e); see *Cowart v. Widener*, 287 Ga. 622, 623-624 (1) (a) (697 SE2d 779) (2010).

Whether a captain in a particular fire department is overtime-exempt requires a fact-sensitive inquiry, focusing on whether the employees at issue spend the majority of their time on management functions, including supervising other employees. See, e.g., *Dept. of Labor v. City of Sapulpa*, 30 F.3d 1285, 1288 (II) (10th. Cir. 1994). Fire captains in the County supervise the activities of the fire company and subordinate personnel. Although the Plaintiffs argue that they were mis-classified under the Fair Labor Standards Act, they have not set forth any specific facts in support of this claim. There is no evidence showing that the Plaintiffs did not spend the majority of their time on supervisory or management duties. See id. Therefore, the Plaintiffs have failed to demonstrate that there is a genuine issue of material fact regarding whether they were mis-classified as overtime-exempt employees.

Under the clear and unambiguous terms of the County Code, the Plaintiffs, after being promoted to the rank of captain, were not entitled to use compensatory time accrued more than a year earlier and they are not entitled to receive payment for their unused compensatory time. Accordingly, there is no written contract that

promised the Plaintiffs compensation for accrued time and the trial court erred in denying the County's motion for summary judgment.[5]

*Judgment reversed. Andrews, P. J., and Ray, J., concur.*

---

[5] Based on our conclusion above, we need not address the County's alternate contention that the trial court erred in not granting its motion for summary judgment based on the statute of limitations as to the Plaintiffs' claims that are more than four years old.