**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 1, 2015**

# In the Court of Appeals of Georgia

A15A1544. McFARLAND v. ROBERTS et al.

BARNES, Presiding Judge.

Robert P. McFarland appeals the superior court's order confirming an arbitration award and entry of judgment against him. He argues that the court erred because the award by the State Bar Committee on the Arbitration of Attorney Fee Disputes ("the Committee') did not correctly interpret well-established contract law and because one of the parties to which the panel granted the award was not a party to the fee contract. For the reasons that follow, we affirm.

> The State Bar's Fee Arbitration program is designed to provide a convenient mechanism to resolve disputes between lawyers and clients over fees, and is administered by the State Bar Committee on the Arbitration of Fee Disputes ("Committee"). See State Bar Rules, Part VI, Arbitration of Fee Disputes, Preamble, 247 Ga. A-2. A petitioner seeking arbitration, whether lawyer or client, must agree to be bound by the award, Rule 6-201 (h) (4), and the respondent may either agree to be bound or not

agree to be bound. The arbitration process differs depending on whether the respondent agrees to be bound by an award or not. If both parties agree to be bound by the arbitration, "the award of the arbitrators is final and binding upon them and may be enforced as provided by the general arbitration laws of the State." Bar Rule 6-417.

(Citation omitted.) *Farley v. Bothwell*, 306 Ga. App. 801, 802 (703 SE2d 397) (2010).

This action arose out of a fee dispute between Doris Roberts and McFarland, her former counsel. The procedural history is complicated. Mrs. Roberts' executor and widow, Raymond Roberts, filed a petition for fee arbitration with the Committee in July 2008, seeking the return of $30,537 in attorney fees paid to McFarland. Mr. Roberts claimed that McFarland had been hired to recover funds "from Woodrow Thomas Roberts on behalf of the Estate of Laura Mae Smith," and asserted that the $30,537 fee was not correct because:

> (a) Client did not win any judgment or receive any compromise settlement proceeds[;]
> (b) Client lost at trial, causing the money previously paid to the attorney to be owed to the Estate of Laura Mae Smith[; and]
> (c) The attorney already received real estate commissions for the sale of estate property.

2

Under former State Bar Arbitration Rule 6-201,[1] the Committee "may" accept jurisdiction over a fee dispute if certain requirements were met, including the client's agreement to be bound by the results of the arbitration. Former Rule 6-201 (f) and (h) (4). Mr. Roberts agreed to be bound.

McFarland answered the petition, also agreeing to be bound by the results of the arbitration. In his answer, McFarland summarized his representation of Mrs. Roberts after she came to him because she thought that one of her three sons had "taken advantage" of Mrs. Roberts' mother, Laura Mae Smith, before she died, and had removed money from Smith's bank account. McFarland explained in his fee arbitration answer that he had "reluctantly" agreed to advance expenses to Mrs. Roberts and accept half of any funds recovered, and drew up the fee contract that Mrs. Roberts signed.

Mrs. Roberts was the only child and sole heir at law of Smith, who was a widow when she died. McFarland subsequently filed a petition in probate court for Mrs. Roberts to obtain Letters of Administration to settle Smith's estate, and also filed suit in superior court against Mrs. Roberts' son, seeking to recover $228,000 the

---

[1]The State Bar Rules related to fee arbitration were amended in their entirety effective December 1, 2012. The rules followed by the arbitration panel throughout these proceedings were those in effect before the December 1, 2012, amendments.

son allegedly took from Smith before she died. The probate court issued Letters of Administration to Mrs. Roberts in November 2005, which she used to withdraw $59,666 from two bank accounts that had belonged to Smith. On December 5, 2005, Mrs. Roberts paid McFarland $30,537, representing half of the proceeds from Smith's bank accounts plus expenses of $1,408, and signed a document McFarland prepared that was titled "Attorney/Client Settlement Agreement."[2]

In April 2006, Mrs. Roberts' son filed a petition to probate the Last Will and Testament of Laura Mae Smith, under which Mrs. Roberts' three sons would share equally in their grandmother's estate and Mrs. Roberts would get nothing. McFarland filed a caveat to the will on Mrs. Roberts' behalf. Funds were paid into the registry of the probate court pending resolution of the will's validity. In January 2007, Mr. Roberts was appointed to serve as Mrs. Roberts guardian and conservator. Mrs. Roberts died in May 2007, and Mr. Roberts was appointed as executor of her estate and has continued to represent her interests in these claims.

A jury determined in November 2007 that the will of Laura Mae Smith propounded by Mrs. Roberts' son was valid, and the probate court admitted the will

---

[2]Mr. Roberts actually signed the document under a Power of Attorney Mrs. Roberts signed on December 5, 2005.

4

to probate. The probate court issued letters testamentary to the son, and in February 2008, the probate court ordered the clerk of court to transmit the funds in the court registry to the son as the executor of Smith's estate. The probate court also granted McFarland's request to withdraw as counsel of record for Mrs. Roberts.

On November 30, 2007, the day after the probate court jury returned its verdict, McFarland sent a letter to Mr. Roberts, reminding him that Mrs. Roberts had signed a fee agreement on August 4, 2005, that obligated her to pay actual expenses incurred in the litigation regarding Smith's estate, which totaled $12,161. McFarland asked Mr. Roberts, as Mrs. Roberts' executor, to make arrangements to pay the debt. In July 2008, Mr. Roberts filed his petition with the Committee, seeking repayment of the $30,537 paid to McFarland from the estate of Laura Smith while Mrs. Roberts was the administrator of that estate. McFarland responded as previously described.

Following a hearing that was not transcribed, the arbitrators issued the following award on July 10, 2009, in favor of Mr. Roberts:

> Arbitrators find that a contract is in place. Arbitrators find that the contract was between Doris Geneva Roberts and Robert P. McFarland. Arbitrators find that the contract was a contingent fee contract "in connection with the estate of [Roberts'] mother: Laura Mae Smith and proceeding against her son, Woodrow Thomas Roberts." Contract entitled Mr. McFarland to receive "one half (50%) of the net amount

paid in satisfaction of any ultimate judgment or compromise settlement proceeds." Arbitrators find that on December 5, 2005, an Attorney/Client Settlement Agreement was signed. On that date, Doris Geneva Roberts, in her capacity as administrator of the estate of Laura Mae Smith[,] disbursed $30,537 to Mr. McFarland. Arbitrators find that there was no ultimate judgment or proceeds from a compromise settlement in existence at that time. Therefore, Arbitrators find for Estate of Doris Geneva Roberts, Respondent to refund $30,537 to Estate of Doris Geneva Roberts.

Although he agreed to be bound by the result of the arbitration, McFarland decided to appeal the decision and reconstructed a transcript of the hearing from his recollection as authorized by OCGA § 5-6-41 (c). He hired new counsel, who asked the Committee in July 2009 to determine whether the transcript was correct, but the Committee did not respond.

McFarland's attorney also asked the State Bar's director of fee arbitration to file the award with the clerk of the Forsyth County Superior Court, thus initiating a civil action per Rule 6-501. In November 2009, McFarland filed a document titled "Objection of Appellant to Award" in the superior court action. He argued that the court should vacate the arbitration award because under State Bar Arbitration Rule 6-412, the arbitrators had no authority to enter an award contrary to the terms of an

6

executed written contract between the parties unless they find fraud, accident, mistake, or that the contract was contrary to Georgia contract law. McFarland and Mrs. Roberts had two written contracts, he argued, one being their contingency fee agreement and the second being their "Settlement Agreement" disbursing the funds that Mrs. Roberts removed from Smith's estate while she was the estate administrator. McFarland argued that the arbitrators apparently had determined, incorrectly, that neither contract was valid.

After a hearing in superior court on May 2012, Mr. Roberts filed an "emergency motion for reconsideration and continuance," asking the superior court to reconsider a proposed ruling it had pronounced orally. The court had pointed out at the hearing that the attorney fees McFarland had collected had not actually belonged to Mrs. Roberts, but had come from bank accounts belonging to Smith's estate. In his motion, Mr. Roberts asked the court to allow the executor of Laura Mae Smith's estate to intervene or substitute for Mr. Roberts in the fee arbitration proceeding and then seek a modification of the award so the payment could be properly directed to the estate rather than to Mr. Roberts. Mr. Roberts also filed a motion to join the executor of Smith's estate as the real party in interest based on the court's questioning whether Mr. Roberts actually had standing to pursue the claim.

7

The superior court issued a written order in October 2012, finding that it sat as an appellate court in this proceeding under the authority of the Fee Arbitration Rules adopted by the Supreme Court of Georgia in 1980. The court denied the motion to join Smith's estate as a party, finding that it had no authority to do so because the Civil Practice Act had no application to the judicial review of an administrative hearing when the superior court sat as an appellate judge. It further denied Mr. Robert's motion for reconsideration as premature, as the court had not previously entered a written order. As to the merits of the award, the court determined that under the Fee Arbitration Rules, it could only render a decision "from the record without a trial de novo on the merits" and either affirm, vacate, or "return the award to the arbitrators with specific directions for further consideration." Rule 6-501.

The trial court chose to return the award, directing the arbitrators to further consider the award in light of specific facts and legal principles set out in the order. Basically, the superior court concluded that the money McFarland had received was not paid to him out of Mrs. Roberts' personal funds, but out of Smith's estate, and that Mrs. Roberts obtained the funds while acting as the administrator of Smith's estate. The cause of action for improper disbursement of estate funds by a previous personal representative vests in the successor personal representative, the court held.

Therefore, the issue for the arbitration panel to determine upon remand was whether the successor personal representative of the Smith estate, who was not party to the arbitration proceedings, could intervene upon remand "as a party who paid [Mrs.] Roberts' fees for representation by McFarland, pursuant to [Rule 6]-201 (c)."

Former Rule 6-201 provided that the Committee "may accept jurisdiction over a fee dispute only" if certain requirements were satisfied. The trial court wanted the arbitration panel to consider this requirement of the Arbitration Code:

> At the time the legal services in question were performed there existed between the lawyer and the client an expressed or implied contract establishing between them a lawyer/client relationship. *A relative or other person paying the legal fees of the client may request arbitration of disputes over those fees provided by the client and the payor join as co-petitioners or co-respondents and both agree to be bound by the result of the arbitration.*

(Emphasis supplied.) Former Fee Arbitration Rule 6-201 (c).

The panel reconvened, and a transcript of the June 19, 2013, hearing is included in the appellate record. After determining that the applicable Fee Arbitration Rules were those in place at the prior hearing in March 2009, the panel heard argument and proffers of evidence. McFarland, through counsel, argued that the Rules contained no provision for intervention, no motion had been filed in the

9

arbitration proceedings to add a party, and the record contained no evidence that the party who sought to be added agreed to be bound by the arbitration results. Further, McFarland objected to applying former Rule 6-201, which was no longer in effect after the Rules were amended in December 2012.

McFarland then reviewed the underlying facts of the claim, and proffered that he had recommended that Mrs. Roberts settle the dispute with her sons about Smith's will by settling for three-quarters of the estate, almost $300,000, but Mr. Roberts, acting on Mrs. Roberts' behalf under a power of attorney, declined to do so. As noted earlier, a jury then determined that Smith's will was valid, and the result of that determination was that instead of being a sole heir at law entitled to the entire estate, Mrs. Roberts took nothing under the will. The probate court removed her as the estate administrator and installed one of her sons as the executor of Smith's estate. McFarland also proffered a list of $13,161 in actual expenses his firm paid to prosecute these cases, in addition to the $1,408 in expenses that had been included in the payment in dispute here. Finally, he argued that if the panel determined he was not entitled to the money based on the parties' fee agreement, he should be allowed to prove the value of his services under quantum meruit, which would have exceeded the amount he received.

10

In response, Mr. Roberts' counsel stated that he was making an oral locum tenens motion[3] to intervene, that the executor of Smith's estate was present and agreed to be bound by the panel's determination, and that the superior court remanded this case to the panel because it determined that the Civil Practice Act did not empower the superior court to add parties but the panel did have that authority. Further, Roberts' counsel emphasized that, while McFarland was arguing that the money came from Smith's estate and the estate's claim should be against Mrs. Roberts' estate rather than her attorney, the panel had already determined the merits and awarded the money. The parties were present before the panel simply "trying to fix the record so that we have an award that the Court can confirm." Further, McFarland had consented to the panel's jurisdiction and agreed to be bound by its determination, so the purpose of the hearing was simply to allow the panel to exercise its jurisdiction and substitute a real party in interest. Consonant with former Rule 6-201 (c), Mr. Roberts argued, a person paying the legal fees of the client was permitted to request arbitration of those fees if both the person and the client agreed to be bound by the panel's decision, which was exactly the issue in this case.

---

[3]Locum tenens is a Latin phrase that means "holding the place," and it connotes "a deputy; a substitute; a representative." Black's Law Dictionary 1025 (10th ed. 2014).

In June 2013, the panel issued a written decision allowing the representative of Smith's estate to intervene, noting that it had been clear in the first phase of these proceedings that the fees McFarland obtained from Mrs. Roberts had actually come from Smith's estate. Exercising its power under Rule 6-423 to interpret the Rules related to the arbitrators' powers and duties, the panel determined that under former Rule 6-201 (c), the estate was permitted to join the claim, as it had agreed to be bound by the arbitration decision. The panel further held that McFarland could not revoke his consent to be bound by the panel's decision. Subsequently, pursuant to Roberts' motion, the panel issued an amended award in October 2013, finding for Roberts and Smith's estate, and directing McFarland to refund $30,537 to Smith's estate.

In January 2014, Mr. Roberts and Smith's estate petitioned the superior court to confirm the amended arbitration award under OCGA § 9-9-12, asserting that McFarland had not refunded the fee or responded to telephone calls or email messages. This petition was filed under a new civil action number and assigned to a different superior court judge. McFarland responded to the petition and objected to the award, arguing that he had not contracted with Smith's estate, which had been Mrs. Roberts' "opponent[] in legal matters, not being on the same side." He further contended that any claim of Smith's estate was time-barred, that the motion for the

amended award was time-barred, that a "compromise settlement" satisfied the fee contract requirements, and that the panel erred by allowing the estate to join the proceedings after the case was remanded by the superior court. McFarland also filed a motion to dismiss the case.

Shortly after a hearing in January 2015, the superior court issued an order confirming the amended award. The court noted that McFarland orally withdrew his motion to dismiss during the hearing, and directed the clerk to enter judgement in favor of the executor of Smith's estate against McFarland for $30,357.

1. The appellees argue that this court lacks jurisdiction over this direct appeal because it should have been brought by application for a discretionary appeal seeking review of a superior court's confirmation of an arbitration award issued by the State Bar of Georgia, a governmental agency, citing *Beckman v. Black*, 170 Ga. App. 193 (316 SE2d 784) (1984). But Mr. Roberts and Smith's estate brought this appeal under the general arbitration law, OCGA § 9-9-12, not just the Fee Arbitration Rules.

"Rule 6-501 does not provide the exclusive means for enforcing an arbitration award issued by the State Bar arbitration committee in a dispute over attorney fees." *Prince v. Bailey Davis, LLC*, 306 Ga. App. 59, 61 (701 SE2d 492) (2010). The Fee Arbitration Rules preamble and Rule 6-417 provide that, when both attorney and

client agree to be bound by the decision, the award is enforceable under the general arbitration laws of the state. Rules Preamble; Rule 6-417; *Prince*, 306 Ga. App. at 61. Under OCGA § 9-9-16, "[a]ny judgment or any order considered a final judgment under this [Arbitration Code] may be appealed pursuant to Chapter 6 of Title 5." As the superior court has issued a final order and judgment in this case, "we conclude that this appeal is from a final judgment directly appealable under OCGA § 5-6-34 (a) (1)."[4] *Torres v. Piedmont Builders, Inc.*, 300 Ga. App. 872, 872-873 (686 SE2d 464) (2009).

2. McFarland argues that the trial court erred in confirming the arbitration award because the three-attorney panel "did not correctly interpret well[-]established contract law" and because one of the parties to whom the award was made was not a party to the fee contract. We find no error.

---

[4]An order simply confirming an arbitration award is not a final, appealable judgment, and until recently, this court required the confirmation order and the final judgment on an arbitration award to be entered on separate documents. In *Green Tree Servicing, LLC v. Jones*, ___ Ga. App. ___ (1) (775 SE2d 714) (2015), however, we determined that, "although OCGA § 9-9-15 of the Georgia Arbitration Code contemplates entry of a judgment separate from the order confirming the award, it does not require that the order and the judgment be entered on separate documents." Accordingly, we have jurisdiction to consider McFarland's appeal.

Pretermitting the validity of all of the preceding proceedings, McFarland's objections to the amended award were filed too late. After the panel issued its amended award, Mr. Roberts and the Smith estate filed a timely application in superior court under OCGA § 9-9-12 to confirm the award within one year of its delivery to them. McFarland filed an objection to the award in March 2014. A party who seeks to modify or vacate an arbitration award must file an application to the court "within three months after delivery of a copy of the award to the applicant." OCGA §§ 9-9-13 (a), 9-9-14 (a). The amended award was issued in October 2013, and McFarland's objection to the award was filed in March 2014, well outside the three-month time statutory time limit allowing such a claim. See *Fulton County v. Lord*, 323 Ga. App. 384, 390-391 (2) (746 SE2d 188) (2013); *Cypress Communications, Inc. v. Zacharias*, 291 Ga. App. 790, 793-795 (2) (662 SE2d 857) (2008); cf. *Galindo v. Lanier Worldwide, Inc.*, 241 Ga. App. 78, 84 (4) (526 SE2d 141) (1999) (construing similar provision in Federal Arbitration Act, defenses that were raised in response to confirmation petition more than three months after arbitration award issued were untimely). Accordingly, the trial court did not err in confirming the award.

*Judgment affirmed. Ray and McMillian, JJ., concur.*

15